## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
---------------------------------------------------x
                                   :
In re                              :   Chapter 11
                                   :
MILAGRO HOLDINGS, LLC, et al.,     :   Case No. 15-11520 (KG)
                                   :
         Debtors.[1]               :   Joint Administration Requested
                                   :
                                   :   Hearing Date: TBD
                                   :   Objection Deadline: TBD
                                   :
---------------------------------------------------x
```

## DEBTORS' MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO ASSUME THE RESTRUCTURING SUPPORT AGREEMENT

The debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors") hereby move (the "Motion") for entry of an order, substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 362, 363(b) and 365(a) of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), authorizing the Debtors to assume that certain Restructuring Support Agreement by and among the Debtors, the Consenting Noteholders[2], the Secured Lenders, the Administrative Agent, the Equity Holders and White Oak Resources VI, LLC ("White Oak") (collectively, the "Parties"), dated as of July 15, 2015 and attached hereto as **Exhibit B** (including all exhibits and schedules attached thereto and joinders related thereto and as may be amended or supplemented from time to time, the "Restructuring

---

[1]   The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are:  Milagro Holdings, LLC (7232); Milagro Oil & Gas, Inc. (7173); Milagro Exploration, LLC (9260); Milagro Producing, LLC (9330); Milagro Mid-Continent, LLC (8804); and Milagro Resources, LLC (6134). The Debtors' mailing address is 1301 McKinney Street, Suite 500, Houston, Texas 77010.

[2]   Unless otherwise defined herein, capitalized terms shall have the meanings ascribed to them in the Restructuring Support Agreement or the *Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan"), which is attached as an exhibit to the Restructuring Support Agreement, as relevant.

Support Agreement")[3] and to perform their obligations thereunder.  In support of this motion, the Debtors respectfully state as follows:

**Jurisdiction and Venue**

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b) and 157, and the A*mended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory and legal predicates for the relief requested herein are sections 105(a), 362, 363(b) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006.

**Background**

3.      On July 15, 2015 (the "Petition Date"), the Debtors commenced their bankruptcy cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases").  No trustee, examiner, or creditors' committee has been appointed in the Chapter 11 Cases.  The Debtors are operating their respective businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Debtors are independent energy companies based in Houston, Texas engaged in the acquisition, development, exploration, and production of oil and natural gas.  The Debtors' historic geographic focus has been along the onshore Gulf Coast area, primarily in Texas, Louisiana, and Mississippi.  The Debtors operate a significant portfolio of oil and natural gas producing properties and mineral interests in this region and have expanded their footprint through the acquisition and development of additional producing or prospective properties in

---

[3]      The Restructuring Support Agreement provides for Additional Consenting Noteholders, Additional Secured Lenders and Additional Equity Holders to execute Joinder Agreements and become parties to the Restructuring Support Agreement.  As used herein, Parties shall include all Additional Consenting Noteholders, Additional Secured Lenders and Additional Equity Holders and Restructuring Support Agreement shall include all Joinder Agreements executed in accordance therewith.

North Texas and Western Oklahoma.  In addition, the Debtors own certain non-operated working interests in leases located on the Outer Continental Shelf in the Gulf of Mexico.  The Debtors own an interest in approximately 4,690 oil and gas leases, substantially all of which are subject to or burdened by royalty interests, overriding royalty interests, third party working and non-working interests, or a sub-set or combination thereof.

5.     Additional information about the Debtors' businesses and the events leading up to the Petition Date can be found in the *Declaration of Scott W. Winn in Support of First Day Relief* [D.I. 3] (the "First Day Declaration"), which was filed on the Petition Date and is incorporated herein by reference.

**A.     The Debtors' Prepetition Capital Structure**

6.     *First Lien Facility.*  Debtors Milagro Exploration, LLC ("Milagro Exploration") and Milagro Producing, LLC ("Milagro Producing") are borrowers and Debtor Milagro Oil & Gas, Inc. ("MOG") is a guarantor under that certain Second Amended and Restated First Lien Credit Agreement, dated as of September 4, 2014 (as amended, restated, supplemented or otherwise modified from time to time, the "Credit Agreement"), by and among Milagro Exploration, Milagro Producing and MOG, the various other financial institutions and other persons that are lenders from time to time under the Credit Agreement (collectively, the "Secured Lenders") and TPG Specialty Lending, Inc., as administrative agent (the "Administrative Agent"), which provides for aggregate borrowings of up to $140 million, subject to a borrowing base that is subject to quarterly redetermination to be effective not later than as of March 1, June 1, September 1, and December 1 of each year (as well as other discretionary redeterminations) (the "Term Loan").  The Term Loan matures on September 4, 2017.  The principal amount outstanding on the Term Loan as of the Petition Date was $87,625,000.

7.    The Term Loan is secured by a senior, first priority lien on substantially all of the Debtors' assets.

8.    *Second Lien Notes*.    MOG issued $250,000,000 aggregate principal amount of 10.500% senior secured second lien notes (the "Second Lien Notes") under that certain Indenture, dated as of May 11, 2011, by and among MOG, as issuer, its Debtor subsidiaries, as guarantors, and Wilmington Trust, National Association (as successor in interest to Wells Fargo Bank, N.A.), as collateral and indenture trustee (the "Second Lien Notes Trustee").  The Second Lien Notes are due May 11, 2016 and carry a face interest rate of 10.500% payable semi-annually each May 15 and November 15.  Interest on the Second Lien Notes was last paid on June 14, 2013.  As of June 30, 2015, the outstanding principal balance of the Notes was $250 million, accrued but unpaid interest on the Notes was approximately $56.1 million and accrued but unpaid late fees and penalties was approximately $5.3 million.

9.    The Second Lien Notes are secured by a second priority lien on substantially all of the Debtors' assets.

10.    *Intercreditor Agreement*.    The relative rights of the Debtors' secured creditors are governed by that certain Intercreditor Agreement, dated as of May 11, 2011 (as amended, restated, supplemented or otherwise modified from time to time, the "Intercreditor Agreement") by and between Wells Fargo Bank, N.A., (as predecessor to the Administrative Agent) and Wells Fargo Bank, N.A. (as predecessor Second Lien Notes Trustee).

**B.      Negotiation and Entry into the Restructuring Support Agreement and Related Documents**

11.      The Restructuring Support Agreement is the lynchpin of the Debtors' prearranged restructuring, providing a clear path towards reorganization and emergence from chapter 11.

12.      As more fully set forth in the First Day Declaration, substantial declines in the price of oil and natural gas beginning in late 2007 have had severe impacts on the Debtors' business and their ability to service their secured debt obligations.  In the years prior to the Petition Date, the Debtors explored a range of restructuring alternatives.  Since 2012, the Debtors have been engaged in extensive discussions and negotiations with certain of their stakeholders, including certain of the Equity Holders and the Consenting Noteholders, regarding a variety of restructuring alternatives.  In addition, the Debtors have utilized a number of financial advisors and investment banks and have exchanged information with and made presentations to over 20 interested parties in an effort to execute a transformational opportunity.

13.      The Debtors' extensive efforts over the last three years have yielded only one suitor—White Oak—that the Debtors believe could credibly execute a transaction that would preserve value for the Debtors' stakeholders.  White Oak's initial contact with the Debtors occurred in September 2013, following an introduction from one of the Equity Holders.  At that time, White Oak performed initial due diligence to better understand the Debtors' assets and financials.  In July of 2014, White Oak's interest continued as it returned for an update on Milagro's 2013 and 2014 drilling results and mid-year 2014 reserves.  Most recently, White Oak was again placed in contact with the Debtors in March of 2015.

14.      Since approximately March of 2015, the Debtors have worked in good faith and at arms'-length with White Oak and the Debtors' various stakeholders to negotiate and execute that

certain Contribution Agreement, dated July 15, 2015 (the "Contribution Agreement"), between MOG and its Debtor subsidiaries and White Oak.  Pursuant to the Contribution Agreement, the Debtors and White Oak will consummate a transaction (the "Contribution Agreement Transaction"), whereby the Debtors will contribute substantially all of their oil and gas assets in exchange for cash and equity interests in White Oak.

15.     Concurrently with the Contribution Agreement, over a period of several months, the Debtors worked in good-faith and at arms'-length with White Oak, the Administrative Agent, the Secured Lenders, certain of the Consenting Noteholders and certain of the Equity Holders to negotiate the Debtors' Plan, which, among other things, will utilize, in part, the Contribution Agreement Transaction to effectuate the Debtors' reorganization, and the Restructuring Support Agreement.

16.     The signatories to the Restructuring Support Agreement, in addition to the Debtors, include the Administrative Agent, holders that collectively own or control 100% of the amounts outstanding under the Term Loan, holders collectively representing or holding, in the aggregate, in excess of 80% of the aggregate outstanding amount of the Second Lien Notes, and holders that collectively own or control 44% of the outstanding equity interests in Milagro Holdings.  The Restructuring Support Agreement binds these Supporting Parties to support the solicitation and confirmation of the Plan, which, upon the effective date, will result in a reorganized MOG (the "Reorganized Debtor") with a substantial equity interest in White Oak and no secured debt on account of the Term Loan or the Second Lien Notes.

17.     Importantly, however, the Restructuring Support Agreement will only continue to bind the Supporting Parties if the Restructuring Support Agreement is assumed by order of the

Bankruptcy Court by August 22, 2015, the date that is thirty-eight days after the Petition Date.[4]

Assumption of the Restructuring Support Agreement is critical to the Debtors' success in obtaining approval of the Plan and expeditiously emerging from chapter 11 to the benefit of the Debtors' creditors and their estates.

### C.    Material Terms of the Restructuring Support Agreement[5]

18.    Pursuant to the Restructuring Support Agreement, the Supporting Parties and the Debtors have agreed to pursue a restructuring transaction (the "Restructuring Transaction") through the Plan.    The Restructuring Transaction is premised on, among other things: (i) effectuation of the Contribution Agreement Transaction; (ii) the payment in full of the Term Loan Claims of the Secured Lenders, and related claims of the Administrative Agent, to the extent such claims have not already paid under the Debtors' requested debtor in possession financing facility (the "DIP Facility"); (iii) the issuance to holders of the Second Lien Notes of a certain percentage of equity interests in the Reorganized Debtor; and (iv) the implementation of a rights offering (the "Rights Offering"), whereby a certain portion of the remaining equity interests in the Reorganized Debtor shall be offered for purchase to eligible holders of the Second Lien Notes that participate in the Rights Offering and the remaining equity interest in the Reorganized Debtor shall be provided to certain of the Consenting Noteholders that are backstopping the Rights Offering.    Following the effective date of the Plan, the Reorganized Debtor will be the owner of the Milagro Interests in White Oak, the holders of the Second Lien

---

[4]    On July 16, 2015, the Requisite Consenting Noteholders and the Requisite Secured Lenders have consented to an extension of the deadline set forth in section 4(a)(iv) of the Restructuring Support Agreement for entry by the Bankruptcy Court of the RSA Order and the Final DIP Order from 35 days to 38 days after the Petition Date. This extension is not, however, reflected in section 4(a)(iv) of the Restructuring Support Agreement attached hereto as Exhibit B.

[5]    The summary of the terms of the Restructuring Support Agreement contained herein is qualified in its entirety by reference to the Restructuring Support Agreement.  If the Restructuring Support Agreement is inconsistent with this summary in any way, then the Restructuring Support Agreement shall govern in all respects, except with respect to section 4(a)(iv) of the Restructuring Support Agreement.

Notes will be the holders of the equity interests of the Reorganized Debtor and the Reorganized

Debtor will be free of its secured debt obligations under the Term Loan and the Second Lien

Notes.

19.     Regarding Claims against and Equity Interests in the Debtors, the Plan generally

provides that:  (i) each Term Loan Claim and the Transaction Expenses of the Administrative

Agent shall be paid in full, to the extent such claims and expenses remain outstanding; (ii) each

Allowed Other Priority Claim shall be paid in full; (iii) each Holder of an Allowed Other

Secured Claim shall, at the election of the Debtors, be paid in full in cash on account of such

claim or receive the collateral securing such claim; (iv) (a) each Holder of an Allowed Notes

Claim that is a Noteholder shall receive, (x) subject to the Second Lien Notes Trustee Charging

Lien, its pro rata share of 100% of the Reorganized Debtor Common Stock subject to dilution

from any Rights Interests or Reorganized Debtor Common Stock in respect of the Rights

Offering or the Backstop Commitment Fee and (y) if applicable, Rights Interests or the Cash-Out

Payment; and (b) the Reorganized Debtor shall pay the Transaction Expenses of the Consenting

Noteholders and the Second Lien Notes Trustee and their respective legal counsel as provided

for in the Restructuring Support Agreement; (v) no Holder of a General Unsecured Claim shall

receive or retain any property or interest on account of such claim; provided, however, Holders

of Allowed General Unsecured Claims who are Eligible Plan Release Consideration Recipients

that consent to become Releasing Parties shall be entitled to, in exchange for the Third Party

Releases, a GUC Settlement Payment; and (vi) no Holder of an Equity Interest in the Debtors

shall receive or retain any property or interest on account of such interest.

20.     By the Restructuring Support Agreement, the Debtors have agreed to take or forego certain actions, including, but not limited to the following, to effectuate and consummate the Restructuring Transaction:

a.      (A) complete the preparation, as soon as reasonably practicable after the Restructuring Support Effective Date, of each of the Plan, the Disclosure Statement and the other Restructuring Documents (including, without limitation, all motions, applications, orders, agreements and other documents, each of which, for the avoidance of doubt, shall contain terms and conditions materially consistent with the Restructuring Support Agreement and acceptable to the relevant Parties to the extent set forth in Section 1 thereof), (B) provide the Restructuring Documents or any documents relating to the DIP Financing Agreement (other than the Plan and Disclosure Statement, substantially in the forms which are attached as exhibits to the Restructuring Support Agreement) to, and afford reasonable opportunity of comment and review of such documents by, the Consenting Noteholders' Advisors, the Secured Lenders' Advisors, the Equity Holders' Advisors and White Oak no less than (x) three (3) business days in advance of any material filing, execution, distribution or use (as applicable) thereof, in the case of a Plan Document, Plan Supplement Document or document relating to the DIP Financing Agreement or (y) two (2) business days in advance of any filing, execution, distribution or use (as applicable) thereof with respect to any other Restructuring Document (for the avoidance of doubt, notices, hearing agendas, certifications of counsel, and other routine bankruptcy filings shall not be considered Restructuring Documents with any advance notice requirement and the Debtors shall serve copies of such documents on counsel to the Supporting Parties promptly after such documents are filed); provided, however, in the event such two (2) or three (3) business days' (as applicable) advance notice is impossible or impracticable under the circumstances, then the Debtors shall notify telephonically or by electronic mail the Consenting Noteholders' Advisors, the Secured Lenders' Advisors, the Equity Holder Advisors and White Oak to advise them of the documents to be filed and the facts that make the provision of such advance notice impossible or impracticable, and shall provide such copies as soon as practicable thereafter; and (C) consult in good faith with the Consenting Noteholders' Advisors, the Secured Lenders' Advisors, the Equity Holders' Advisors and White Oak regarding the form and substance of any of such documents (to the extent set forth in Section 1 of the Restructuring Support Agreement) in advance of the filing, execution, distribution or use (as applicable) thereof; Restructuring Support Agreement § 4(a)(i);

b.    (A) support, and take all reasonable actions necessary to facilitate, the implementation and consummation of the Restructuring Transaction and (B) not take any action that is inconsistent with the implementation or consummation of the Restructuring Transaction; Restructuring Support Agreement § 4(a)(ii);

c.    commence the Chapter 11 Cases in the Bankruptcy Court no later than July 15, 2015 and file the Plan and Disclosure Statement with the Bankruptcy Court by July 22, 2015; Restructuring Support Agreement § 4(a)(iii);

d.    file a motion seeking assumption of the Restructuring Support Agreement within 1 business day of the Petition Date; Restructuring Support Agreement § 2(x);

e.    obtain entry by the Bankruptcy Court of (A) the Interim DIP Order as soon as reasonably practicable and in no event later than 5 days after the Petition Date and (B) the RSA Order and the Final DIP Order as soon as reasonably practicable and in no event later than 35 days after the Petition Date; Restructuring Support Agreement § 4(a)(iv);[6]

f.    obtain entry of the Disclosure Statement Order and the order approving the Rights Offering Procedures by the Bankruptcy Court no later than 60 days after the Petition Date; Restructuring Support Agreement § 4(a)(v);

g.    commence the Solicitation and Rights Offering no later than three days after both the Disclosure Statement Order and the order approving the Rights Offering Procedures have been entered by the Bankruptcy Court; Restructuring Support Agreement § 4(a)(vi);

h.    obtain entry of the Confirmation Order by the Bankruptcy Court no later than 100 days after the Petition Date; Restructuring Support Agreement § 4(a)(vii);

i.    the effective date of the Plan shall have occurred no later than 18 days after the Bankruptcy Court's entry of the Confirmation Order; Restructuring Support Agreement § 4(a)(viii);

j.    timely file a formal written objection to any motion filed with the Bankruptcy Court by any party seeking the entry of an order (A) directing the appointment of an examiner with expanded powers or a trustee, (B) converting the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or (C) dismissing the Chapter 11 Cases; Restructuring Support Agreement § 4(a)(ix);

---

[6] See Footnote 4 above.

k.      timely file a formal written objection to any motion filed with the Bankruptcy Court by any party seeking the entry of an order modifying or terminating the Debtors' exclusive right to file and/or solicit acceptances of a chapter 11 plan; Restructuring Support Agreement § 4(a)(x);

l.      (A) support and take any and all actions necessary, appropriate or reasonably requested by the Supporting Parties to facilitate the Restructuring Transaction, including the solicitation, confirmation, and consummation of the Plan, (B) not take any action that is inconsistent with, or that would delay or impede the Restructuring Transaction, including, without limitation, Solicitation, confirmation, or consummation of the Plan and (C) perform its obligations under the Restructuring Support Agreement in accordance with its terms and as set forth in the Plan; Restructuring Support Agreement § 4(a)(xi);

m.      operate the business of the Debtors in the ordinary course (giving effect to the existence of the Chapter 11 Cases) consistent with the Contribution Agreement and the DIP Financing Agreement, and otherwise comply with the covenants and other provisions in the Contribution Agreement; Restructuring Support Agreement § 4(a)(xii);

n.      keep the Supporting Parties informed about the operations of the Debtors and provide the Supporting Parties any information that is reasonably requested regarding the Debtors; Restructuring Support Agreement § 4(a)(xiii);

o.      promptly notify the Supporting Parties in writing of any governmental or third party complaints, litigations, investigations, or hearings (or communications indicating that the same may be contemplated or threatened) against the Debtors or of any related correspondence received; Restructuring Support Agreement § 4(a)(xiv);

p.      comply in all material respects with applicable laws (including making or obtaining all required consents and/or appropriate filings or registrations with, notifications to, or authorizations, consents or approvals of any regulatory or governmental authority, and paying all taxes as they become due and payable); Restructuring Support Agreement § 4(a)(xv);

q.      maintain the good standing (or equivalent status under the laws of its incorporation or organization) under the laws of the state or other jurisdiction in which they are incorporated or organized; Restructuring Support Agreement § 4(a)(xvi);

r.      use commercially reasonable efforts to obtain any and all required governmental, regulatory and/or third party approvals necessary or required for the implementation or consummation of the Restructuring

Transaction or the approval by the Bankruptcy Court of the Restructuring Documents; Restructuring Support Agreement § 4(a)(xvii);

s.　　as promptly as practicable, provide the Consenting Noteholders' Advisors, Secured Lenders' Advisors and Equity Holders' Advisors with any correspondence, notices or similar documents delivered to or from White Oak or its affiliates in connection with the Contribution Agreement or the Restructuring Transaction; Restructuring Support Agreement § 4(a)(xviii);

t.　　not seek, solicit, propose, support, make an agreement to, or take steps or actions that are reasonably likely or intended to result in the submission of an Alternative Transaction; Restructuring Support Agreement § 4(b)(i);

u.　　not modify the Plan, in whole or in part, in a manner that is inconsistent with any material aspect of the Restructuring Support Agreement; Restructuring Support Agreement § 4(b)(ii);

v.　　not withdraw or revoke the Plan; Restructuring Support Agreement § 4(b)(iii);

w.　　not publicly announce its intention not to pursue the Plan; Restructuring Support Agreement § 4(b)(iv);

x.　　not take any action or file any motion, pleading or other Restructuring Document with the Bankruptcy Court (including any modifications or amendments thereof) that is inconsistent with any material aspect of the Restructuring Support Agreement, the Plan or any other Restructuring Document and is not otherwise reasonably satisfactory in all respects to the Requisite Consenting Noteholders; Restructuring Support Agreement § 4(b)(v);

y.　　not commence an avoidance action or other legal proceeding that seeks to disallow, subordinate, recharacterize or otherwise challenges the validity, enforceability, or priority of the Credit Agreement, Indenture, the Term Loan or the Second Lien Notes, any Second Lien Note Claims, any Term Loan Claims or any of the liens, mortgages, assignments and other security interests granted pursuant thereto, or otherwise affects the rights of the Creditor Parties; Restructuring Support Agreement § 4(b)(vi);

z.　　other than as required by the Restructuring Support Agreement or the Plan, not amend their respective certificates or articles of incorporation, bylaws or comparable organizational documents; Restructuring Support Agreement § 4(b)(vii);

aa.　　not take any action which is prohibited by the covenants and other provisions of the Contribution Agreement unless the requisite approval for

such action is received as contemplated by the Contribution Agreement; Restructuring Support Agreement § 4(b)(viii);

bb.  not (A) merge with or into, or consolidate or amalgamate with, any other person, (B) permit any other person to merge with or into, or consolidate or amalgamate with, it, or (C) purchase, lease or otherwise acquire (in one transaction or a series of transactions) all or any substantial part of the assets of any other person; Restructuring Support Agreement § 4(b)(ix);

cc.  not change materially their respective financial or tax accounting methods, except insofar as may be required by a change in generally accepted accounting principles in the U.S. or applicable law, or revalue any of its material assets; Restructuring Support Agreement § 4(b)(xi);

dd.  not, other than in connection with the Contribution Agreement and in accordance with the DIP Financing Agreement, (A) hire, after the execution of the Restructuring Support Agreement, any officer, or (B) enter into, adopt or amend any employment agreements or any management compensation or incentive plans, or increase in any manner the compensation or benefits (including severance) of any director, officer or management level employee of the Debtors; Restructuring Support Agreement § 4(b)(xii);

ee.  not pay any post-petition trade payable or other post-petition expense prior to the date such trade payable or expense is due and payable, expect to the extent in the ordinary course of business consistent with past practice and in accordance with the DIP Financing Agreement; Restructuring Support Agreement § 4(b)(xiii);

ff.  not incur or suffer to exist any indebtedness or any guarantee of any indebtedness of any person, except (A) indebtedness and guarantees existing and outstanding immediately prior to the date hereof and (B) trade payables, and liabilities arising and incurred in the ordinary course of business consistent with past practices and in accordance with the DIP Financing Agreement; Restructuring Support Agreement § 4(b)(xv);

gg.  not (A) purchase or acquire any indebtedness, debt securities or equity securities of any person, or (B) make any loans or advances to, or investments in, any person, other than in the ordinary course of business and in accordance with the DIP Financing Agreement; Restructuring Support Agreement § 4(b)(xvi);

hh.  not incur any liens or security interests, except any liens or security interests arising by operation of law in the ordinary course of business and otherwise in accordance with Contribution Agreement and the DIP Financing Agreement; Restructuring Support Agreement § 4(b)(xvii);

ii.  not seek or enter into any debtor-in-possession financing under section 364(d) of the Bankruptcy Code or use cash collateral other than pursuant to the DIP Financing Agreement unless the cash proceeds thereof are used to indefeasibly pay the Term Loans in full upon entry of an order approving such alternative financing; Restructuring Support Agreement § 4(b)(xviii); or

jj.  not seek, solicit, propose or support a chapter 11 plan of reorganization that does not provide for payment in full in cash of the Term Loan Claims on the effective date of such plan, unless consented to by the Requisite Secured Lenders; Restructuring Support Agreement § 4(b)(xix).

21.     The Debtors' obligations under the Restructuring Support Agreement are qualified by certain provisions preserving the Debtors' ability to act in accordance with their fiduciary duties:  nothing in the Restructuring Support Agreement requires the Debtors, or any of their respective directors or officers (in such person's capacity as a director or officer) to take any action, or to refrain from taking any action, to the extent that taking such action or refraining from taking such action would be inconsistent with such Person's fiduciary obligations under applicable law; provided that the Debtors shall promptly notify the Consenting Noteholders and the Secured Lenders if any such action is taken, or refrained from being taken, that would otherwise be in violation of the Restructuring Support Agreement.  *See* Restructuring Support Agreement § 23(c).

22.     In exchange for the Debtors' promises under the Restructuring Support Agreement, among other things, the Supporting Parties have agreed to:

a.  support, and take all reasonable actions necessary to facilitate the implementation and consummation of, the Restructuring Transaction; Restructuring Support Agreement § 3(a)(i);

b.  (A) subject to the receipt of the Disclosure Statement approved by the Disclosure Statement Order, timely vote or cause to be voted (to the extent entitled to vote on the Plan) their Claims and Interests to accept the Plan and not opt out of or object to the releases provided for in the Plan, and (B) not change or withdraw such vote (or cause or direct such vote to be changed or withdrawn); provided, however, that, subject only to those

remedies available to the Debtors set forth in Section 13 of the Restructuring Support Agreement, such vote may be revoked (and, upon such revocation, deemed void *ab initio*) by any of the Supporting Parties at any time following the expiration of the Restructuring Support Period (it being understood by the Parties that any modification of a Plan that results in a termination of the Restructuring Support Agreement pursuant to Section 5 thereof shall entitle such Creditor Party the opportunity to change its vote in accordance with section 1127(d) of the Bankruptcy Code); Restructuring Support Agreement § 3(a)(ii);

c.      not (A) directly or indirectly seek, propose, support, assist, encourage, solicit, or vote for any Alternative Transaction (or encourage any other person to do so), (B) directly or indirectly seek, propose, support, assist, encourage, solicit, or vote for a chapter 11 plan of reorganization that does not provide for payment in full in cash of the Term Loan Claims on the effective date of such plan, unless consented to by the Requisite Secured Lenders (or encourage any other person to do so), (C) directly or indirectly seek, propose, support, assist or encourage the termination or modification of the Debtors' exclusive period for the filing of a chapter 11 plan or the Debtors' exclusive period to solicit a chapter 11 plan (or encourage any other person to do so), (D) directly or indirectly seek, propose, support, assist or encourage the disallowance, subordination or recharacterization of, or other challenge to, the Term Loan Claims or the Second Lien Note Claims or the validity, perfection, priority or enforceability of any liens, mortgages, assignments and other security interests granted pursuant to any security documents with respect to the Term Loan Claims or Second Lien Note Claims (or encourage any other person to do so) or (E) take any other action, including but not limited to initiating any legal proceedings or enforcing rights as a holder of Claims and Interests, that is inconsistent with the Restructuring Support Agreement or the Restructuring Documents,[7] or that would prevent, interfere with, delay or impede the implementation or consummation of the Restructuring Transaction (including, but not limited to, the Bankruptcy Court's approval of the Restructuring Documents, the Solicitation and confirmation of the Plan and the consummation of the Restructuring Transaction pursuant to the Plan); Restructuring Support Agreement § 3(a)(iii);

d.      subject to the receipt of a disclosure statement and other solicitation materials approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code, timely vote or cause to be voted its Claims and Interests against any Alternative Transaction; Restructuring Support Agreement § 3(a)(iv); and

---

[7]    The Consenting Acon Parties (as defined in the Restructuring Support Agreement) have advised the Debtors that they do not consent to approval of the *Motion for Entry of Interim and Final Orders Establishing Notice and Objection Procedures for Transfers of Equity Securities and for Trading in Claims Against the Debtors' Estates* [Docket No. 11].

e.      all of the members of the new board of managers of the Reorganized Debtor and the two (2) initial members of the board of managers of White Oak (the "White Oak Board") to be selected by the Reorganized Debtor shall be selected as provided in the Company Governance Documents; provided that the second manager to be initially appointed to the White Oak Board shall be a person designated by ACON Funds Management, LLC ("ACON") or its designee or designees.  During the two (2) year period following the Effective Date, the Reorganized Debtor shall, and the Consenting Noteholders shall and shall at all times cause the Reorganized Debtor to, take all actions necessary in order to cause the nomination and election of the person designated by ACON or its designee or designees as the Reorganized Debtor's second manager on the White Oak Board.  The Consenting Noteholders further agree in the Restructuring Support Agreement that, on or as soon as practicable after the Effective Date, ACON (or its designee or designees) shall receive $2.0 million from the Reorganized Debtor as an advance payment in respect of acting as a manager (or observer) on the White Oak Board, whether from proceeds of the Rights Offering or otherwise.  Restructuring Support Agreement § 3(a)(v).

23.     To ensure the carefully negotiated and bargained for support of the Parties, the Restructuring Support Agreement contains certain limitations on transfer and acquisition of Claims and Interests.  Specifically, Creditor Parties and Equity Holders shall not sell, assign, pledge or otherwise divest any part of their Claims or Equity Interests in the Debtors unless the transferee is a Supporting Party under the Restructuring Support Agreement, executes a joinder to become a Supporting Party or is an affiliate that is deemed to be a Supporting Party.  Transfers that do not comply with the procedures in the Restructuring Support Agreement are deemed void *ab initio*.  Restructuring Support Agreement, § 3(c).

24.     The Restructuring Support Agreement provides that it will terminate upon mutual written agreement among the Debtors, the Requisite Consenting Noteholders and the Requisite Secured Lenders.  Restructuring Support Agreement § 5(c).

25. The Restructuring Support Agreement also provides that the Requisite Consenting Noteholders or the Requisite Secured Lenders may terminate the Restructuring Support Agreement due to the following or as follows:

a. the breach in any material respect by the Debtors of the Restructuring Support Agreement, and such breach remains uncured for a period of four (4) business days from the receipt of written notice of such breach from the Requisite Consenting Noteholders or the Requisite Secured Lenders, provided that the Debtors shall not be entitled to cure any breach under section 4(b)(iii), (iv) or (xviii) of the Restructuring Support Agreement; Restructuring Support Agreement § 5(a)(i);

b. at 5:00 p.m. prevailing Eastern Time on the fifth (5) business day after the failure of the Debtors to satisfy any of the milestones set forth in Paragraphs 20(b) and (d)–(h) herein, provided that such failure is not the result of a material breach by any of the Consenting Noteholders or the Secured Lenders of the terms of the Restructuring Support Agreement; and provided further, that the Debtors shall have four (4) business days from receipt of a written notice from the Requisite Consenting Noteholders or the Requisite Secured Lenders to cure the failure to satisfy such milestones in a manner that does not prevent or diminish in a material way compliance with the terms of the Restructuring Support Agreement; Restructuring Support Agreement § 5(a)(ii);

c. the issuance by any governmental authority or court of competent jurisdiction, of any ruling, judgment or order enjoining the consummation of a material portion of the Restructuring Transaction; Restructuring Support Agreement § 5(a)(iii);

d. the Plan is amended or otherwise modified so as to be inconsistent with the Restructuring Support Agreement or modified so as to have a material impact on the treatment, as set forth in the Restructuring Support Agreement and the Plan, substantially in the form attached thereto, of the Consenting Noteholders (as reasonably determined by the Requisite Consenting Noteholders) or the Secured Lenders (as reasonably determined by the Requisite Secured Lenders); Restructuring Support Agreement § 5(a)(iv);

e. the Bankruptcy Court grants relief terminating, annulling, or modifying the automatic stay with regard to any assets of the Debtors having an aggregate fair market value in excess of $100,000; Restructuring Support Agreement § 5(a)(v);

f. the Bankruptcy Court enters an order modifying or terminating the Debtors' exclusive right to file and/or solicit acceptances of a chapter 11

plan, unless prior to such date, such order has been dismissed, vacated or modified; Restructuring Support Agreement § 5(a)(vi);

g.    the Bankruptcy Court grants relief that is materially inconsistent with the Restructuring Support Agreement or the Plan; Restructuring Support Agreement § 5(a)(vii);

h.    upon (A) the termination of the Contribution Agreement in accordance with its terms or (B) a final determination by the Bankruptcy Court that the Cash Payment Cap (as defined in the Contribution Agreement), the proceeds from the Rights Offering and other cash available to the Debtors is insufficient to pay the amounts required under the Plan to be paid in full in cash, on account of allowed unclassified claims and allowed classified claims senior to Class 4 (Note Claims); Restructuring Support Agreement § 5(a)(ix);

i.    upon the filing by the Debtors of any motion or other request for relief seeking the (A) appointment of an examiner with expanded powers or a chapter 11 trustee, (B) conversion of the Chapter 11 Cases to cases under chapter 7, or (C) dismissal of the Chapter 11 Cases; Restructuring Support Agreement § 5(a)(x);

j.    the Bankruptcy Court enters an order (A) directing the appointment of an examiner with expanded powers or a chapter 11 trustee, (B) converting the Chapter 11 Cases to cases under chapter 7, (C) dismissing the Chapter 11 Cases, (D) terminating exclusivity under section 1121 of the Bankruptcy Code, (E) making a finding of fraud, dishonesty or misconduct by any executive, manager, officer or director of the Debtors, regarding or relating to the Debtors; Restructuring Support Agreement § 5(a)(xi);

k.    upon the withdrawal, waiver, amendment or modification by the Debtors of the Plan or any of the Restructuring Documents or the filing of a pleading seeking to withdraw, waive, amend or modify any term or condition of the Plan or any of the Restructuring Documents, which withdrawal, waiver, amendment, modification or filing is inconsistent with the Restructuring Support Agreement, the Plan or the Restructuring Documents or is materially adverse to the treatment, as set forth in the Restructuring Support Agreement and the Plan, substantially in the form attached thereto, to the Consenting Noteholders (as reasonably determined by the Requisite Consenting Noteholders) or the Secured Lenders (as reasonably determined by the Requisite Secured Lenders), or, if the Debtors file any motion or pleading with the Bankruptcy Court that is not consistent with the Restructuring Support Agreement, the Plan or the other Restructuring Documents and such motion or pleading has not been withdrawn prior to the earlier of (A) three (3) business days after the Debtors receive written notice from the Requisite Consenting Noteholders or the Requisite Secured Lenders that such motion or pleading is

inconsistent with the Restructuring Support Agreement or the Restructuring Documents, as applicable and (B) the entry of an order of the Bankruptcy Court approving such motion; Restructuring Support Agreement § 5(a)(xii);

l.    the Debtors seek, solicit, propose, support, make an agreement to, or take steps or actions that are reasonably likely or intended to result in the submission of an Alternative Transaction; Restructuring Support Agreement § 5(a)(xiii);

m.    the Debtors take any action or file any motion, pleading or other Restructuring Document with the Bankruptcy Court that has not received the requisite approvals as set forth in the Restructuring Support Agreement; Restructuring Support Agreement § 5(a)(xiv);

n.    if an involuntary case against the Debtors is commenced or an involuntary petition is filed seeking bankruptcy, winding up, dissolution, liquidation, administration, moratorium, reorganization or other relief in respect of the Debtor or the Debtors' debts, or of a substantial part of the Debtors' assets or operations, under any federal, state or foreign bankruptcy, insolvency, administrative, receivership or similar law now or hereafter in effect (provided that such involuntary proceeding is not dismissed within a period of thirty (30) days after the filing thereof) or if any court order grants the relief sought in such involuntary proceeding; Restructuring Support Agreement § 5(a)(xv);

o.    except as provided for in the Restructuring Support Agreement, if the Debtors (A) voluntarily commence any case or file any petition seeking bankruptcy, winding up, dissolution, liquidation, administration, moratorium, reorganization or other relief under any federal, state or foreign bankruptcy, insolvency, administrative receivership or similar law now or hereafter in effect, (B) consent to the institution of, or fail to contest in a timely and appropriate manner, any involuntary proceeding or petition described above, (C) apply for or consent to the appointment of a receiver, administrator, administrative receiver, trustee, custodian, sequestrator, conservator or similar official for the Debtors or for a substantial part of the Debtors' assets, (D) file an answer admitting the material allegations of an involuntary petition filed against them in any such proceeding, (E) make a general assignment or arrangement for the benefit of creditors or (F) take any corporate action for the purpose of authorizing any of the foregoing; Restructuring Support Agreement § 5(a)(xvi);

p.    the failure to satisfy any of the conditions to effectiveness set forth in the Plan by the deadlines set forth in such Plan, except as such conditions may be waived by the Debtors, the Requisite Consenting Noteholders and the

Requisite Secured Lenders; Restructuring Support Agreement § 5(a)(xvii); or

q.      the termination of the DIP Financing Agreement.  Restructuring Support Agreement § 5(a)(xviii).

26.     The Requisite Consenting Noteholders and Requisite Secured Lenders may also terminate the Restructuring Support Agreement as to all Parties after receipt of a Fiduciary Out Notice provided pursuant to Section 23(c) of the Restructuring Support Agreement. Additionally, (i) the Requisite Equity Holders may terminate the Restructuring Support Agreement as to themselves upon the occurrence of the events in Section 5(a)(ii) of the Restructuring Support Agreement (after the four (4) business day-period referred to in that Section) or if any of the Plan Documents, Motions and Orders, the Plan Supplement Documents and the other Restructuring Documents are not materially consistent with the treatment of such Party as set forth in the Restructuring Support Agreement, the Plan or the Disclosure Statement, and (ii) White Oak may terminate the Restructuring Support Agreement as to itself upon the termination of the Contribution Agreement, which upon such termination by White Oak, shall automatically terminate the Restructuring Support Agreement with respect to all Parties. Restructuring Support Agreement § 5(a).

27.     The Restructuring Support Agreement provides that the Debtors may terminate the Restructuring Support Agreement under the following circumstances:

a.      the breach in any material respect by the Consenting Noteholders holding or representing a principal amount of the Second Lien Note Claims, such that the remaining Consenting Noteholders (excluding the breaching Consenting Noteholders) would hold or represent in the aggregate less than 67% in amount of the total outstanding Second Lien Note Claims, of any of the covenants, obligations, representations or warranties under the Restructuring Support Agreement, which breach remains uncured for a period of three (3) business days from the receipt of the Company Termination Notice; Restructuring Support Agreement § 5(b)(i);

b.     the issuance by any governmental authority or court of competent jurisdiction, of any ruling, judgment or order enjoining the consummation of a material portion of the Restructuring Transaction; Restructuring Support Agreement § 5(b)(ii);

c.     the entry by the Bankruptcy Court of an order (A) directing the appointment of an examiner with expanded powers or a chapter 11 trustee, (B) converting the Chapter 11 Cases to cases under chapter 7, or (C) dismissing the Chapter 11 Cases; Restructuring Support Agreement § 5(b)(iii);

d.     the failure to confirm the Plan due to the failure of the class of the holders of the Second Lien Notes to meet the requirements set forth in Section 1126(c) of the Bankruptcy Code or due to the Bankruptcy Court otherwise denying confirmation of the Plan; Restructuring Support Agreement § 5(b)(iv);

e.     the election by the Debtors to terminate the Restructuring Support Agreement in exercise of the Fiduciary Out; Restructuring Support Agreement § 5(b)(v); or

f.     the entry of a final, non-appealable judgment or order declaring the Restructuring Support Agreement or any material portion thereof to be unenforceable or preventing consummation of the Plan or the Restructuring Transaction or any material portion thereof by any governmental authority, including the Bankruptcy Court, or any other regulatory authority or court of competent jurisdiction.  Restructuring Support Agreement § 5(b)(vi);

28.    Also, the Debtors may, with the prior written consent of the Requisite Consenting Noteholders and the Requisite Secured Lenders, terminate the Restructuring Support Agreement as to (i) the Equity Holders for a breach in any material respect by the Equity Holders representing at least 50% of the aggregate principal amount of the Equity Interests of any of the covenants, obligations, representations or warranties under the Restructuring Support Agreement, which breach remains uncured for a period of three (3) business days from the receipt of the Company Termination Notice or (ii) White Oak for a breach in any material respect by White Oak of any of the covenants, obligations, representations or warranties under the Restructuring Support Agreement or the Contribution Agreement, which breach remains

uncured for a period of three (3) business days from the receipt of the Company Termination Notice.  Restructuring Support Agreement § 5(b).

29.     Upon the termination of the Restructuring Support Agreement in accordance with its terms, and except as provided in Section 14 thereof, the Restructuring Support Agreement will become void and of no further force or effect and each Party shall, except as otherwise expressly provided in the Restructuring Support Agreement, be immediately released from its liabilities, obligations, commitments, undertakings and agreements under or related to the Restructuring Support Agreement and shall have all the rights and remedies that it would have had and shall be entitled to take all actions, whether with respect to the Restructuring Transaction or otherwise, that it would have been entitled to take had it not entered into the Restructuring Support Agreement, including all rights and remedies available to it under applicable law, the Indenture, the Credit Agreement, the Intercreditor Agreement and any ancillary documents or agreements thereto; provided, however, termination shall not relieve a Party from (i) liability for its breach or non-performance under the Restructuring Support Agreement prior to termination and (ii) obligations under the Restructuring Support Agreement which by their terms expressly survive termination.  If the Restructuring Support Agreement has been terminated in accordance with its terms at a time when permission of the Bankruptcy Court shall be required for a Supporting Party to change or withdraw (or cause to change or withdraw) its vote to accept the Plan, the Debtors shall not oppose any attempt by such Supporting Party to change or withdraw (or cause to change or withdraw) such vote at such time.  Restructuring Support Agreement § 5(d).

**D.      The Debtors' Decision to Assume the Restructuring Support Agreement**

30.     The Debtors entered into the Restructuring Support Agreement after months of vigorous negotiations with creditors and stakeholders and a robust process that included input and direction from the Debtors' experienced restructuring professionals.  In the years prior to its execution, the Debtors considered various alternatives to the transactions contemplated by the Restructuring Support Agreement, and determined in their reasonable business judgment that the terms of the Restructuring Support Agreement, reached after hard-fought, arms'-length negotiations, represent the best restructuring terms available.

31.     The Restructuring Support Agreement provides that it may be terminated if the Bankruptcy Court has not entered an order authorizing the Debtors to assume the Restructuring Support Agreement and perform their obligations thereunder on or before August 22, 2015. Additionally, failure to meet the milestones provided by the Restructuring Support Agreement, or termination thereof, would give rise to events of default under the Debtors' DIP Facility.

32.     The Debtors believe that the Restructuring Transaction contemplated by the Restructuring Support Agreement is the best possible alternative under the circumstances. Importantly, however, in the event that a better alternative to the proposed Restructuring Transaction were to present itself, the Restructuring Support Agreement provides that the Debtors may terminate the Restructuring Support Agreement in the exercise of their fiduciary duties relating to such event.

### Relief Requested

33.     By this motion, the Debtors seek entry of an order, pursuant to sections 362 and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006, authorizing the Debtors to assume the Restructuring Support Agreement and perform their obligations thereunder.

## Basis for Relief

**A.      Assumption of the Restructuring Support Agreement.**

34.      Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the court's approval, may assume or reject an executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a); *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992).  Courts reviewing a debtor's decision to assume or reject an executory contract or unexpired lease apply a business judgment standard. See *In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court"); *Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982), *aff'd*, 465 U.S. 573 (1984); *see also In re Trans World Airlines, Inc.*, 261 B.R. 103, 120–21 (Bankr. D. Del. 2001).  Debtors receive considerable discretion in determining whether to assume or reject an executory contract.  *Stanziale v.  Machtomi (In re Tower Air, Inc.)*, 416 F.3d 229, 238 (3d Cir. 2005).

35.      Assumption of an executory contract is appropriate where such assumption would benefit a debtor's estate.  *See In re Rickel Home Ctrs., Inc.*, 209 F.3d 291, 298 (3d Cir. 2000) ("Section 365 enables the [debtor] to maximize the value of the debtor's estate by assuming executory contracts and unexpired leases that benefit the estate and rejecting those that do not."); *Burtch v. Masiz (In re Vaso Active Pharms., Inc.)*, 500 B.R. 384, 397–98 (Bankr. D. Del. 2013) (same); *Show Grp. v. Bechtel Jacobs Co. (In re IT Grp., Inc.)*, 350 B.R. 166, 177 (Bankr. D. Del. 2006) (same).

36.      Once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain

objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also Computer Sales Int'l v. Fed. Mogul (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (Bankr. D. Del. 2003) (explaining that under the business judgment standard, a court should defer to the debtor's decision on contract rejection, "unless that decision is the product of bad faith or a gross abuse of discretion"). Rather, there is "a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *Gantler v. Stephens*, 965 A.2d 695, 705–06 (Del. 2009); *In re Cent. Jersey Airport Servs.*, LLC, 282 B.R. 176, 183 (Bankr. D.N.J. 2002) (holding that "the debtor can reasonably take . . . a business risk if in its sound business judgment, it is worth the risk").

37.    Indeed, the business judgment standard "embodies the deference that is accorded to managerial decisions of a board of directors." *Omnicare, Inc. v. NCS Healthcare, Inc.*, 818 A.2d 914, 928 (Del. 2003). Accordingly, so long as a debtor exercises "reasonable" business judgment, a court should approve the proposed assumption or rejection. *See*, *e.g.*, *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Group of Inst. Investors v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 318 U.S. 523, 550 (1943); *In re Mkt. Square Inn, Inc.*, 978 F. 2d 116, 121 (3d. Cir. 1992) (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court"); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib.*, 872 F.2d 36, 39–40 (3d Cir. 1989); *In re Dendreon Corp.*, No. 14-12515 (PJW) (Bankr. D. Del. Dec. 23, 2014) (finding that the debtors' assumption of a Restructuring Support Agreement was "within their sound business judgment"); *Glenstone Lodge, Inc. v. Buckhead Am. Corp. (In re Buckhead Am. Corp.)*, 180 B.R. 83, 88 (D. Del. 1995).

38.      In addition, the Debtors seek approval of the assumption of the Restructuring Support Agreement pursuant to section 105(a) of the Bankruptcy Code.  Section 105(a) provides a bankruptcy court with broad powers in the administration of a case under the Bankruptcy Code, providing, in relevant part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]."  11 U.S.C. § 105(a).  Provided that a bankruptcy court does not employ its equitable powers to achieve a result not contemplated by the Bankruptcy Code, the exercise of its section 105(a) power is proper.  *In re Fesco Plastics Corp., 996 F.2d 152, 154 (7th Cir. 1993); Pincus v. Graduate Loan Ctr. (In re Pincus)*, 280 B.R. 303, 312 (Bankr. S.D.N.Y. 2002).  Pursuant to section 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Cooper Props. Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) (noting that bankruptcy court is "one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

39.      The Debtors' decision to assume the Restructuring Support Agreement is an exercise of their sound business judgment.  First, the Restructuring Support Agreement is the product of extensive, arms-length negotiations among the Debtors and the Parties, each of whom had separate, sophisticated legal counsel and advisors.  Second, the Restructuring Support Agreement is the lynchpin of the Debtors' restructuring strategy, and the Debtors' failure to perform under the Restructuring Support Agreement could jeopardize their overall restructuring

efforts.  As part of the Debtors' proposed restructuring, the Restructuring Support Agreement contemplates the approval and implementation of the DIP Financing Agreement.  This commitment could be lost if the Debtors are unable to assume the Restructuring Support Agreement.

40.    Third, assumption of the Restructuring Support Agreement is necessary in order to ensure the support of the Debtors' largest secured creditors throughout the plan process, and, thus, will help expedite and facilitate the Debtors' restructuring efforts during these Chapter 11 Cases.

41.    Finally, the Restructuring Support Agreement allows the Debtors to terminate the Restructuring Support Agreement in the exercise of their fiduciary duties.  While it is the Debtors' belief that the Restructuring Transaction contemplated by the Restructuring Support Agreement is the best available alternative, the Restructuring Support Agreement explicitly allows the Debtors to terminate their obligations thereunder if the Debtors' fiduciary duties require pursuing an Alternative Transaction.  Thus, the Restructuring Support Agreement allows the Debtors to comply with their fiduciary duty to maximize the value of their estates.

42.    For the foregoing reasons, the Restructuring Support Agreement is a critical component of the Debtors' restructuring efforts and the Debtors' decision to assume the Restructuring Support Agreement represents a sound exercise of the Debtors' business judgment.

43.    Courts in this district have approved debtors' assumption of prepetition Restructuring Support Agreements on numerous occasions, analyzing the debtors' assumption decisions in the context of whether reasonable business judgment was exercised.  Where, as here, debtors have acted on an informed basis, in good faith, and in the honest belief that the action taken was in the best interests of the company, courts have appropriately deferred to these

managerial decisions.  *See, e.g., In re Dendreon Corp.*, No. 14-12515 (PJW) (Bankr. D. Del. Dec. 23, 2014) (approving the debtors' assumption of a prepetition Restructuring Support Agreement as a proper exercise of the debtors' business judgment); *In re Rural/Metro Corp.*, No. 13-11952 (KJC) (Bankr. D. Del. Sept. 5, 2013) (same); *In re Bicent Holdings, LLC*, No. 12-11304 (KG) (Bankr. D. Del. May 15, 2012) (same); *In re William Lyon Homes*, No. 11-14019 (CSS) (Bankr. D. Del. Dec. 29, 2011) (same); *In re Satelites Mexicanos, S.A. de C.V.*, No. 11-11035 (CSS) (Bankr. D. Del. Apr. 13, 2011) (same).

**B.**      **Payment of Customary Professional Fees and Expenses is Warranted under Section 363(b) of the Bankruptcy Code.**

44.      Regarding the payment of the Transaction Expenses of the Consenting Noteholders' Advisors and Secured Lenders' Advisors, subject to its terms, the Restructuring Support Agreement provides that the Debtors shall: (i) pay on or before the Petition Date all Transaction Expenses incurred on or after June 1, 2015; (ii) further subject to the terms of the DIP Orders, pay all Transaction Expenses incurred on or after the Petition Date on a regular and continuing basis; and (iii) after the effective date of the Plan and consummation of the Restructuring Transaction, pay all Transaction Expenses not paid pursuant to (i) and (ii) immediately above.

45.      The Bankruptcy Code authorizes a debtor in possession to "use, sell, or lease, other than in the ordinary course of business, property of the estate," after notice and a hearing. 11 U.S.C. § 363(b).  It is well established in this jurisdiction that a debtor may use property of the estate outside the ordinary course of business under section 363(b) of the Bankruptcy Code if there is a good business reason for doing so.  *See, e.g., In re Elpida Memory, Inc.*, No. 12-10947 (CSS), 2012 WL 6090194, at *5 (Bankr. D. Del. Nov. 20, 2012); *In re Montgomery Ward*

*Holding Corp.*, 242 B.R. 147, 153 (Bankr. D. Del. 1999); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 175 (Bankr. D. Del. 1991).

46.     This standard for approval of the use of property outside the ordinary course of business is a deferential one.  *See In re Filene's Basement, LLC*, No. 11-13511 (KJC) (Bankr. D. Del. Apr.  29, 2014) (stating that, under the business judgment standard, once the debtor presents "a reasonable basis for its business decisions . . . courts will generally not entertain objections to the debtor's conduct. . . .").

47.     Here, the Debtors have articulated a clear business justification for entering into the Restructuring Support Agreement.   By securing the support and cooperation of the Supporting Parties, the Restructuring Support Agreement results in significant cost savings for the Debtors, their estates and their creditors by avoiding the cost, distraction and delay that creditor litigation could have caused in these cases.  In light of these substantial benefits, the Debtors have determined that the payment of the Transaction Expenses is appropriate – and, in fact, customary in connection with these types of commitments.

48.     Based on the foregoing, the Debtors respectfully submit that the payment the Transaction Expenses under the Restructuring Support Agreement is a proper exercise of their reasonable business judgment and should be approved.

**C.     Cause Exists to Modify the Automatic Stay to Effectuate the Relief Requested**

49.     Section 362(a) of the Bankruptcy Code operates to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  Section 362, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause."  *Id.* at § 362(d)(1).

50.     The Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to modify the automatic stay to the extent necessary to permit the relief requested in this motion and, for the reasons described herein, believe this relief is appropriate in the context of assuming the Restructuring Support Agreement.

## Waiver of Certain Bankruptcy Rules

51.     To successfully implement the foregoing, and to the extent applicable, the Debtors seek a waiver of (i) the 14-day stay (a) of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h), and (b) of an order applicable to assignment of an unexpired executory contract under Bankruptcy Rule 6006(d); and (ii) the notice requirements under Bankruptcy Rule 6004(a).

## Notice

52.     Notice of this Motion shall be provided to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) counsel to TPG Specialty Lending, Inc., the administrative agent under the Debtors' pre-petition secured credit facility and agent under the Debtors' proposed DIP Financing Agreement; (iii) counsel to the Initial Consenting Noteholders; (iv) the Debtors' 30 largest unsecured creditors on a consolidated basis, as identified in their chapter 11 petitions; (v) counsel to the Initial Equity Holders; (vi) counsel to the Second Lien Notes Trustee; (vii) counsel to White Oak; and (viii) those parties who have formally filed requests for notice in the Chapter 11 Cases pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors respectfully submit that no further notice is necessary.

WHEREFORE the Debtors respectfully request that the Court (a) enter the proposed order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and (b) grant such other and further relief as is just and proper.

Dated: July 16, 2015
      Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ M. Blake Cleary*
M. Blake Cleary (No. 3614)
Joel A. Waite (No. 2925)
Ryan M. Bartley (No. 4985)
Ian J. Bambrick (No. 5455)
1000 N. King Street
Rodney Square
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253

-and-

John F. Higgins
Eric M. English
PORTER HEDGES LLP
1000 Main Street, 36th Floor
Houston, TX 77002
Telephone: (713) 226-6687
Facsimile: (713) 226-6287

*Proposed Counsel for the Debtors and Debtors in Possession*