IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| MILAGRO HOLDINGS, LLC, et al.[1] | § | Case No. 15-11520 (KG) |
| | § | |
| Debtors. | § | Jointly Administered |
| | § | |
| | § | |

### INTERIM ORDER (I) AUTHORIZING DEBTORS TO (A) OBTAIN POSTPETITION FINANCING PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), AND 364(e) AND (B) USE CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363, (II) GRANTING ADEQUATE PROTECTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363, AND 364, AND(III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)

Upon the *Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to (A) Obtain Postpetition Financing Pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) and (B) Use Cash Collateral Pursuant to 11 U.S.C. § 364, (II) Granting Adequate Protection Pursuant to 11 U.S.C. §§361, 362, 363 and 364, and (III) Scheduling Final Hearing Pursuant to Bankruptcy Rules 4001(b) and (c)*, dated as of July 15 2015 (the "Motion")[2] of Milagro Oil & Gas, Inc. ("Milagro") and its affiliated debtors and debtors-in-possession (collectively with Milagro, the "Debtors") pursuant to 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2002-1, 4001-2 and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Local Rules"),

---

[1] The Debtors in these chapter 11 cases are:  Milagro Holdings, LLC, Milagro Oil & Gas, Inc., Milagro Exploration, LLC, Milagro Producing, LLC, Milagro Mid-Continent, LLC and Milagro Resources, LLC.

[2] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the DIP Credit Agreement (as defined below).

seeking entry of (i) an interim order (this "Interim Order") and (ii) a final order (the "Final Order"); and the Debtors' having requested on the record at the interim hearing on the Motion (the "Interim Hearing") that the Court enter an Interim Order, *inter alia,*:

(a) authorizing the Debtors to obtain secured postpetition financing on a superpriority basis (the "DIP Facility") pursuant to the terms and conditions of that certain "Credit Agreement," in substantially the form attached to the Motion as Exhibit II (as the same may be amended, supplemented, restated or otherwise modified from time to time, the "DIP Credit Agreement"), by and among Milagro Exploration, LLC and Milagro Producing LLC, as borrowers (each a "Borrower" and collectively the "Borrowers"), Milagro Oil & Gas, Inc, and each subsidiary of Milagro Oil & Gas, Inc. listed as a guarantor on the signature pages thereto, as guarantors (collectively, the "Guarantors"), the various financial institutions and other Persons from time to time parties thereto (the "Lenders"), TPG Specialty Lending, Inc., as administrative agent (in such capacity, the "DIP Agent") for the Lenders, and as the swing line lender (in such capacity, the "Swing Line Lender" and together with the Lenders, the "DIP Lenders"), pursuant to which the DIP Lenders have agreed to provide on a final basis up to $117,250,857.80 comprised of: (i) new money revolving loans of up to $15,000,000 (the "DIP Revolving Facility"); and (ii) subject to entry of a Final Order and Paragraph 15 hereof, a term loan (the "Term Loan") equal to the dollar-for-dollar conversion of the Prepetition First Lien Obligations (as defined below) outstanding under the Prepetition First Lien Loan Documents (as defined below) into DIP Obligations (as defined below);

(b) authorizing the Debtors to execute the DIP Credit Agreement and the other documents, agreements and instruments delivered pursuant thereto or executed or filed in connection therewith, all as may be reasonably requested by the DIP Agent (as the same may be

amended, restated, supplemented or otherwise modified from time to time, and collectively with the DIP Credit Agreement, the "DIP Loan Documents");

(c) granting to the DIP Agent, for itself and for the benefit of the DIP Lenders first priority security interests in and liens on all of the DIP Collateral (as defined below) to secure the DIP Facility and all obligations owing and outstanding thereunder and under the DIP Loan Documents, as applicable, this Interim Order and the Final Order, as applicable (collectively, and including all "Obligations" as described in the DIP Credit Agreement, the "DIP Obligations"), subject only to Permitted Priority Liens (as defined in the DIP Credit Agreement) and prior payment of the Carve-Out (as defined in paragraph 13 below);

(d) granting allowed superpriority administrative expense claims to the DIP Agent and the DIP Lenders;

(e) authorizing the Debtors to use Cash Collateral (as defined below);

(f) authorizing the Debtors to grant adequate protection to (A) the Prepetition First Lien Agent (as defined below) on behalf of the Prepetition First Lien Lenders (as defined below) and (B) the Prepetition Second Lien Trustee (as defined below) on behalf of the Prepetition Second Lien Noteholders (as defined below);

(g) subject only to entry of the Final Order, authorizing the dollar-for-dollar conversion of the Prepetition First Lien Obligations to a post-petition Term Loan; and

(h) scheduling a hearing (the "Final Hearing"), pursuant to Bankruptcy Rule 4001(c)(2), to consider entry of the Final Order ((a) through (h) collectively, the "Requested Relief");

and the Interim Hearing having been held on July [17], 2015; and upon all of the pleadings filed with the Court and the evidence proffered or adduced at the Interim Hearing; and the Court having heard and resolved or overruled any and all objections to the Requested Relief;

and it appearing that the Requested Relief is in the best interests of the Debtors, their estates, and creditors; and upon the record herein; and after due deliberation thereon, and good and sufficient cause appearing therefor:

### IT IS HEREBY FOUND AND DETERMINED THAT:[3]

A.    Petition Date.  On July 15, 2015 (the "Petition Date"), the Debtors commenced their chapter 11 cases (these "Chapter 11 Cases") by filing voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Court").  The Debtors are operating their businesses and managing their affairs as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  As of the date hereof, no trustee, examiner, or official committee of creditors holding unsecured claims (a "Creditors' Committee") has been appointed in any of these Chapter 11 Cases.

B.    Jurisdiction; Venue.  The Court has jurisdiction over these Chapter 11 Cases, the parties, and the Debtors' property pursuant to 28 U.S.C. §§ 157(b) and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D). The Court is a proper venue of these Chapter 11 Cases and the Requested Relief under 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief sought herein are sections 105, 361, 362,363, 364, 503 and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014 and the applicable Bankruptcy Local Rules.

C.    Notice.  Notice of the Motion, the relief requested therein and the Interim Hearing (the "Notice") has been served by the Debtors pursuant to Bankruptcy Rules 2002 and 4001;

---

[3]    Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as applicable, pursuant to Bankruptcy Rule 7052.

Bankruptcy Local Rules 2002-1, 4001-1(a), and 9013-1(m) on (i) the Debtors' thirty largest unsecured creditors on a consolidated basis, (ii) counsel to the DIP Agent and the Prepetition First Lien Agent, (iv) counsel to the Prepetition Second Lien Trustee (iii) any parties that have filed a notice of appearance in these Chapter 11 Cases pursuant to Bankruptcy Rule 2002, (iv) all of the landlords of the Debtors' commercial real properties, (v) all known holders of liens upon the Debtors' assets, (vi) the United States Attorney for the District of Delaware, (vii) the Internal Revenue Service, (viii) the Securities and Exchange Commission (the "SEC"), and (ix) the United States Trustee for the District of Delaware.    Under the circumstances, the Notice constitutes good and sufficient notice of the relief requested and complies with Bankruptcy Rules 4001(b) and (c) and the Bankruptcy Local Rules, and no further notice of the Requested Relief and the relief granted by this Interim Order is necessary or shall be required.

   D. <u>Prepetition First Lien Obligations and Senior Liens</u>.

    (i) For purposes of this Interim Order, the term "<u>Prepetition First Lien Obligations</u>" shall mean all of the Obligations (as such term is defined in the Prepetition First Lien Loan Documents (as defined below)), as of the Petition Date, owed to TPG Specialty Lending, Inc., in its capacity as administrative agent (in such capacity, the "<u>Prepetition First Lien Agent</u>") for certain lenders (the "<u>Prepetition First Lien Lenders</u>") and the Prepetition First Lien Lenders  under the Second Amended and Restated First Lien Credit Agreement, dated as of September 4, 2014, among Milagro Exploration, LLC and Milagro Producing, LLC, as borrowers, Milagro Oil & Gas, Inc. as a guarantor, the Prepetition First Lien Lenders, and the Prepetition First Lien Agent (as the same has been amended, restated or modified from time to time, the "<u>Prepetition First Lien Financing Agreement</u>", and together with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination

agreements, instruments, amendments, fee letters and any other agreements delivered pursuant to thereto or in connection therewith, the "Prepetition First Lien Loan Documents").

(ii)    To secure the Prepetition First Lien Obligations, the Debtors granted to the Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Lenders, first priority liens upon and senior security interests in (the "Prepetition Senior Liens") substantially all of the Debtors' property and assets (collectively, the "Prepetition First Lien Collateral") as more particularly set forth in certain security documents and instruments, including but not limited to the (a) Second Amended and Restated First Lien Pledge and Security Agreement and Irrevocable Proxy, dated as of September 4, 2014, by the Debtors and other grantors thereto in favor of the Prepetition First Lien Agent, (b) numerous Mortgages related to Oil and Gas Properties (as defined in the Prepetition First Lien Loan Documents) and (c) Control Agreements (as defined in the Prepetition First Lien Loan Documents).

E.    Prepetition Second Lien Obligations and Prepetition Second Liens.

(i)    For purposes of this Interim Order, the term "Prepetition Second Lien Obligations" shall mean all of the Obligations (as such term is defined in the Prepetition Second Lien Indenture (as defined below)), as of the Petition Date, owing by the Debtors to Wilmington Trust, National Association (as successor to Wells Fargo Bank, N.A.), in its capacity as trustee (in such capacity, the "Prepetition Second Lien Trustee") for certain holders (the "Prepetition Second Lien Noteholders," and together with the Prepetition First Lien Lenders, the "Prepetition Lenders") under the 10½% Senior Secured Second Lien Notes Due 2016 (the "Prepetition Second Lien Notes") under that certain Indenture, dated as of May 11, 2011 by and among Milagro and the Debtor guarantor parties thereto and Wells Fargo Bank, N.A. (as amended, restated or supplemented from time to time, the "Prepetition Second Lien Indenture," and

together with all agreements, documents, notes, mortgages, security agreements, pledges, guarantees, subordination agreements, instruments, amendments, fee letters and any other agreements delivered pursuant thereto or in connection therewith, the "Prepetition Second Lien Note Documents"). To secure the Prepetition Second Lien Obligations, the Debtors granted the Prepetition Second Lien Trustee, for the benefit of itself and the Prepetition Second Lien Noteholders, certain second priority liens (the "Prepetition Second Liens," and together with the Prepetition Senior Liens, the "Prepetition Liens") on certain collateral (the "Prepetition Second Lien Collateral," and together with the Prepetition First Lien Collateral, the "Prepetition Collateral").

(ii)    Pursuant to that certain Intercreditor Agreement, dated as of May 11, 2011 (as amended, restated, supplemented or otherwise modified from time to time, the "Intercreditor Agreement") by and among Wells Fargo Bank, N.A., (as predecessor to the Prepetition First Lien Agent) and Wells Fargo Bank, N.A. (as predecessor to the Prepetition Second Lien Trustee), the Prepetition Second Liens are junior and subordinate to the Prepetition Senior Liens.

F.    Debtors' Acknowledgments and Stipulations.  In requesting the DIP Facility, and in exchange for and as a material inducement to (i) the DIP Lenders to agree to provide the DIP Facility and (ii) the Prepetition Second Lien Trustee, on behalf of the Prepetition Second Lien Noteholders to permit the priming of the Prepetition Second Liens, the Debtors acknowledge, represent, stipulate, and agree, subject to the terms and provisions of paragraph 15 below, that:

(i)    upon approval of this Interim Order by the Court, the Debtors have obtained all authorizations, consents and approvals required to be obtained from, and have made all filings with and given all notices required to be given to, all federal, state and local governmental

7

agencies, authorities and instrumentalities in connection with the execution, delivery, validity and enforceability of the DIP Loan Documents and the use of Cash Collateral to which any Debtor is a party;

(ii)    until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way prime or seek to prime (or otherwise cause to be subordinated in any way) the liens and security interests provided to the DIP Agent and the DIP Lenders by offering a subsequent lender or any party-in-interest a superior or *pari passu* lien or claim pursuant to section 364(d) of the Bankruptcy Code, or otherwise, except with respect to (a) the Permitted Priority Liens and (b) prior payment of the Carve-Out;

(iii)    until such time as all DIP Obligations are indefeasibly paid in full in cash, the Debtors shall not in any way or at any time permit to exist an administrative expense claim against the Debtors of any kind or nature whatsoever, including, without limitation, claims for any administrative expenses (a) on account of any break-up fee and expense reimbursement authorized to be paid to any person or entity, or (b) of the kind specified in, or arising or ordered under sections 105, 326, 328, 503(b), 506(c), 507(a), 507(b), 546(c), 552(b), 726, 1113 and 1114 of the Bankruptcy Code, that is superior to or *pari passu* with the DIP Superpriority Claim (as defined below) provided herein, except with respect to prior payment of the Carve-Out;

(iv)    the Debtors have requested that the Prepetition First Lien Lenders and the Prepetition Second Lien Noteholders consent to, among other things, (a) the Debtors' use of Cash Collateral and the other Prepetition Collateral, (b) the incurrence of the DIP Loans by the Borrowers and the Guarantors' guarantees of the DIP Loans under the DIP Loan Documents, and (c) the Debtors' granting of the priming DIP Liens (as defined below) in connection therewith. The Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien

Trustee, and the Prepetition Second Lien Noteholders are entitled, pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral (x) in exchange for their consent to allow the Debtors' use of such Prepetition Collateral, including the Cash Collateral, and (y) for any diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the priming of the Prepetition Liens by the DIP Agent and DIP Lenders pursuant to this Interim Order, the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, or otherwise;

(v)      as of the Petition Date, (a) the aggregate principal amount of the Prepetition First Lien Obligations of not less than $87,625,000, together with interest (including default interest) thereon, premiums, Yield Maintenance Premium and Prepayment Premium (each as defined in the Prepetition First Lien Loan Documents), costs, expenses, fees (including attorneys' fees), indemnities, reimbursement obligations and other charges and Obligations owed by the Debtors are due and payable under the Prepetition First Lien Loan Documents; (b) all of the Prepetition First Lien Obligations constitute legal, valid, binding and non-avoidable obligations of the Debtors and are unconditionally owing by the Debtors to the Prepetition First Lien Lenders, and (c) the Prepetition First Lien Obligations are not subject to any avoidance, reductions, set-off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as set forth in paragraph 15 below;

(vi)      as of the Petition Date, (a) the aggregate principal amount of the Prepetition Second Lien Obligations of not less than $250,000,000, together with interest (including default interest) thereon, and premiums, costs, expenses, fees (including attorneys' fees), indemnities,

reimbursement obligations and other charges and obligations owed by the Debtors are due and payable under the Prepetition Second Lien Note Documents, (b) all of the Prepetition Second Lien Obligations constitute legal, valid, binding and non-avoidable obligations of the Debtors and are unconditionally owing by the Debtors to the Prepetition Second Lien Trustee and the Prepetition Second Lien Noteholders, and (c) the  Prepetition Second Lien Obligations are not subject to any avoidance, reductions, set-off, offset, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity, except as set forth in paragraph 15 below;

(vii)    as of July 1, 2015, the Prepetition First Lien Agent and Prepetition First Lien Lenders have determined and advised the Debtors that the amount of the Yield Maintenance Premium (as defined in the Prepetition First Lien Loan Documents) due and payable is $16,649,787;

(viii)   the  Prepetition First Lien Agent and Prepetition First Lien Lenders and the Debtors have agreed that upon the entry of the Final Order, the Yield Maintenance Premium due and payable shall be reduced and allowed, subject to Paragraph 15, in the amount of $14,000,000 without defense, offset, withholding, counterclaim or deduction of any kind;

(ix)     as of the Petition Date, the Prepetition First Lien Agent and Prepetition First Lien Lenders have determined and advised the Debtors that the amount of accrued and unpaid interest due and payable on the Prepetition First Lien Obligations is $640,376.44;

(x)      the  Prepetition First Lien Agent and Prepetition First Lien Lenders and the Debtors have agreed that upon the entry of the Final Order, the amount of accrued and unpaid

interest due and payable on the Prepetition First Lien Obligations as of the Petition date shall be set at $625,857.81 without defense, offset, withholding, counterclaim or deduction of any kind;

(xi)    the aggregate value of the Prepetition Collateral exceeds the amount of the Prepetition First Lien Obligations;

(xii)   the Prepetition Liens constitute valid, binding, enforceable, non-avoidable and perfected liens with priority over any and all other liens (other than Permitted Liens, as defined in the Prepetition First Lien Loan Documents) and are not subject to any challenge or defense, including, without limitation, respectively, avoidance, reductions, recharacterization, subordination (whether equitable, contractual or otherwise), claims, counterclaims, cross-claims, offsets, defenses or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity;

(xiii)  any payments made on account of the Prepetition First Lien Obligations prior to the Petition Date were (a) on account of amounts in respect of which the Prepetition First Lien Agent and the Prepetition First Lien Lenders were oversecured with respect to the amounts owed on account of the Prepetition First Lien Obligations, (b) payments out of the Prepetition Collateral, and/or (c) made in the ordinary course of business, and did not diminish any property otherwise available for distribution to unsecured creditors;

(xiv)   any payments made on account of the Prepetition Second Lien Obligations prior to the Petition Date were (a) payments out of the Prepetition Collateral, and/or (b) made in the ordinary course of business, and did not diminish any property otherwise available for distribution to unsecured creditors;

(xv)    the Debtors and their estates have no claims, objections, challenges, causes of action, and/or choses in action, including without limitation, avoidance claims under chapter 5 of

the Bankruptcy Code and applicable non-bankruptcy law, against the Prepetition First Lien Agent, any of the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee, any of the Prepetition Second Lien Noteholders or any affiliates, agents, attorneys, advisors, professionals, officers, directors or employees of the Prepetition First Lien Agent, any of the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee, any of the Prepetition Second Lien Noteholders arising out of, based upon or related to the Prepetition First Lien Loan Documents, the Prepetition First Lien Obligations, the Prepetition Second Lien Note Documents or the Prepetition Second Lien Obligations;

(xvi)    all of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral constitutes Cash Collateral of the Prepetition First Lien Lenders and the Prepetition Second Lien Noteholders;

(xvii)    none of the DIP Agent, DIP Lenders, Prepetition First Lien Agent or Prepetition First Lien Lenders is a control person or insider of the Debtors, nor owes any fiduciary obligation to the Debtors, by virtue of or with respect to any of the actions taken by them in respect of or in connection with the DIP Loans or the Prepetition First Lien Obligations;

(xviii)    none of the Prepetition Second Lien Trustee, or Prepetition Second Lien Noteholders is a control person or insider of the Debtors, nor owes any fiduciary obligation to the Debtors, by virtue of or with respect to any of the actions taken by them in respect of or in connection with the Prepetition Second Lien Obligations; and

(xix)    the Prepetition First Lien Agent (on behalf of itself and the Prepetition First Lien Lenders) and the Prepetition Second Lien Trustee (on behalf of itself and the Prepetition Second Lien Noteholders) are parties to the Intercreditor Agreement, which sets forth subordination and other provisions governing the relative priorities and rights of the Prepetition First Lien

Obligations and the Prepetition Senior Liens, on the one hand, and the Prepetition Second Lien Obligations and the Prepetition Second Liens, on the other hand. The Debtors admit, stipulate, and agree that the Intercreditor Agreement was entered into in good faith and is fair and reasonable to the parties thereto and enforceable in accordance with the terms thereof.

G.    <u>Cash Collateral</u>.  For purposes of this Interim Order, the term "<u>Cash Collateral</u>" shall mean and include all "cash collateral," as defined in section 363 of the Bankruptcy Code, in or on which the DIP Agent, the Prepetition First Lien Agent or the Prepetition Second Lien Trustee have a lien, security interest or other interest (including, without limitation, any adequate protection liens or security interests) whether existing on the Petition Date, arising pursuant to this Interim Order, or otherwise and shall include, without limitation:

(i)    all cash proceeds arising from the collection, sale, lease or other disposition, use or conversion of any real or personal property, including insurance policies (including, without limitation, policies for the benefit of directors and officers of the Debtors), in or on which the Prepetition First Lien Agent or Prepetition Second Lien Trustee have a lien or a replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise, and whether such property has been converted to cash, existed as of the commencement of this Chapter 11 Case, or arose or was generated thereafter;

(ii)    all of the respective deposits, refund claims and rights in retainers of the Debtors on which the Prepetition Lenders have a lien or replacement lien, whether as part of the Prepetition Collateral or pursuant to an order of the Court or applicable law or otherwise; and

(iii)    the proceeds of any sale of DIP Collateral or Prepetition Collateral in connection with any sale consummated prior to entry of the Final Order.

H.    <u>Adequate Protection</u>.  The Prepetition First Lien Lenders, the Prepetition First Lien Agent, the Prepetition Second Lien Trustee and the Prepetition Second Lien Noteholders are each entitled, pursuant to sections 361, 363(e), and 364(d)(l) of the Bankruptcy Code, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, in exchange for the Debtors' use of such Prepetition Collateral, to the extent of the diminution in value, if any, of the Prepetition Collateral, including, without limitation, any diminution in value resulting from (i) the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral, (ii) the priming of the Prepetition Liens on and in the Prepetition Collateral by the DIP Agent or the DIP Lenders, (iii) the subordination of the Prepetition First Lien Obligations and the Prepetition Second Lien Obligations to the Carve-Out or  (iv)  the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

I.    <u>Purpose and Necessity of Financing</u>.  The Debtors require the financing described in the Requested Relief to (i) permit the continuation of their businesses and preserve their going concern value, (ii) satisfy payroll obligations and other working capital and general corporate purposes of the Debtors consistent with the terms set forth in the DIP Loan Documents and the Approved Budget (as defined in paragraph 2 below), and (iii) pay fees and expenses related to the DIP Loan Documents and the Chapter 11 Cases. If the Debtors do not obtain authorization to borrow under the DIP Credit Agreement, they will suffer immediate and irreparable harm.  The Debtors are unable to obtain adequate unsecured credit allowable as an administrative expense under section 503 of the Bankruptcy Code, or other sufficient financing under sections 364(c) or (d) of the Bankruptcy Code, on more favorable terms than those set forth in the DIP Loan Documents, based on the totality of the circumstances.  Further, neither the Prepetition First Lien

Agent nor the Prepetition First Lien Lenders have consented to the priming of their pre-petition liens by lenders (except to the extent provided herein and under the DIP Loan Documents). A loan facility in the amount provided by the DIP Loan Documents is not available to the Debtors without granting the DIP Agent, for the benefit of the DIP Lenders, superpriority claims, liens, and security interests, pursuant to sections 364(c)(1), 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, as provided in this Interim Order and the DIP Loan Documents. After considering all alternatives, the Debtors have concluded, in the exercise of their sound business judgment, that the DIP Facility represents the best financing available to them at this time.

J.    Willingness to Provide Financing.   The DIP Lenders have indicated a willingness to provide financing to the Debtors subject to the entry of this Interim Order, and conditioned upon the entry of the Final Order, including findings that such financing is essential to the Debtors' estates, the DIP Lenders are extending credit to the Debtors as set forth in the DIP Facility in good faith, and that the claims, superpriority claims, security interests, liens, rights, and other protections granted to the DIP Lenders and DIP Agent will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order, the Final Order or any other order.

K.    Good Cause Shown.   Good cause has been shown for entry of this Interim Order. The ability of the Debtors to obtain sufficient working capital and liquidity under the DIP Loan Documents is vital to the Debtors' estates and creditors. The liquidity to be provided under the DIP Loan Documents will enable the Debtors to continue to operate their businesses in the ordinary course, preserve the value of the Debtors' assets and pursue a restructuring transaction. Among other things, entry of this Interim Order is necessary to maximize the value of the

Debtors' assets and to avoid immediate and irreparable harm to the Debtors and their estates, and, accordingly, is in the best interests of, the Debtors, their estates and their creditors.

L.    <u>Sections 506(c) And 552(b) Waivers</u>.  In light of (i) the DIP Agent's and the DIP Lenders' agreement to permit their DIP Liens and DIP Superpriority Claim to be subject to prior payment of the Carve-Out, and in exchange for and as a material inducement to the DIP Agent and DIP Lenders to agree to provide the DIP Facility and (ii) the agreement of the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee, and the Prepetition Second Lien Noteholders to permit their Prepetition Liens and Adequate Protection Claims (as defined below) to be subject to prior payment of the Carve-Out, the DIP Liens, and the DIP Superpriority Claim and to permit the use of their Cash Collateral for payments made in accordance with the Approved Budget and the terms of this Interim Order, the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent and the Prepetition First Lien Lenders are each entitled to (a) subject to entry of the Final Order, a waiver of any "equities of the case" claims under section 552(b) of the Bankruptcy Code and (b) subject to entry of the Final Order in the case of the Prepetition First Lien Agent and Prepetition First Lien Lenders, a waiver of the provisions of section 506(c) of the Bankruptcy Code.

M.    <u>Good Faith</u>.  The terms of the DIP Loan Documents, including, without limitation, the interest rates and fees applicable, and intangible factors relevant thereto, are more favorable to the Debtors than those available from alternative sources.  Based upon the record before the Court, the DIP Loan Documents have been negotiated in good faith and at arm's-length among the Debtors, the DIP Lenders, and the DIP Agent under no duress, and without undue influence, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP

Facility, and the use of Cash Collateral, including in respect of the granting of the DIP Liens, any challenges or objections to the DIP Facility or the use of Cash Collateral, and all documents related to any and all transactions contemplated by the foregoing. Any DIP Loans and other financial accommodations made to the Debtors by the DIP Agent and the DIP Lenders pursuant to the DIP Loan Documents and this Interim Order shall be deemed to have been extended by the DIP Agent and the DIP Lenders in good faith, as that term is used in section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders shall be entitled to all protections afforded thereby.

N.      <u>Fair Consideration and Reasonably Equivalent Value</u>.  All of the Debtors have received and will receive fair and reasonable consideration in exchange for access to the DIP Loans and all other financial accommodations provided under the DIP Loan Documents and this Interim Order.  The terms of the DIP Loan Documents are fair and reasonable, reflect the Debtors' exercise of prudent judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

O.      <u>Immediate Entry of Interim Order</u>.  The Debtors have requested immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Bankruptcy Local Rule 4001-2(b).  The permission granted herein to enter into the DIP Loan Documents and to obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Interim Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for access to the financing necessary for the continued flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses and further enhance the Debtors' prospects for a successful reorganization or sale of substantially all of their assets.

Based upon the foregoing findings, acknowledgements, and conclusions, and upon the record made before this Court at the Interim Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1.      <u>Disposition</u>.  The relief requested by the Debtors on the record at the Interim Hearing is granted on the terms set forth in this Interim Order.  Any objection to the interim relief sought by the Debtors that has not previously been withdrawn or resolved is hereby overruled on its merits.  The term of this Interim Order, the DIP Loan Documents, and the use of Cash Collateral authorized hereunder shall expire, and the DIP Loans made pursuant to the this Interim Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Interim Order by way of acceleration or otherwise) on the 35th day after the date of entry of this Interim Order if the Final Order has not been entered by the Court prior to such date, or (b) upon the occurrence of an Event of Default under the DIP Credit Agreement.

## <u>AUTHORIZATION FOR DIP FINANCING AND USE OF CASH COLLATERAL</u>

2.      <u>Authorization For DIP Financing And Use of Cash Collateral</u>.

(a)      The Debtors are hereby authorized, on an interim basis, to incur DIP Obligations immediately subject to the terms of this Interim Order, the Approved Budget, and the DIP Loan Documents, in the aggregate principal amount of up to $11,000,000 (the "<u>Maximum Interim Borrowing</u>").  Available financing under the DIP Credit Agreement shall, on an interim basis, be made to fund, in accordance with the DIP Loan Documents and the Approved Budget, working capital and general corporate requirements of the Debtors, bankruptcy-related costs and expenses (including interest, fees, and expenses in accordance with this Interim Order or the DIP Loan

18

Documents), and any other amounts required or allowed to be paid in accordance with this Interim Order, but only as and to the extent authorized by the Approved Budget and the DIP Loan Documents.

(b)    Subject to entry of the Final Order and subject to Section 15 hereof, the Debtors shall be deemed to have automatically paid in full the Prepetition First Lien Obligations by way of a dollar-for-dollar conversion of all Prepetition First Lien Obligations into DIP Obligations.

(c)    The Debtors are authorized to use Cash Collateral subject to and in accordance with the terms, conditions, and limitations set forth in this Interim Order, the Approved Budget (and permitted variances as set forth in the DIP Loan Documents) and the DIP Loan Documents, without further approval by the Court.

(d)    The Debtors have delivered to the Prepetition First Lien Agent, the DIP Agent and DIP Lenders a Budget that sets forth projected cash receipts and cash disbursements (by line item) on a weekly basis for the time period from and including the Petition Date through October 11, 2015, a copy of which is attached hereto as Exhibit A (the "Approved Budget"). The Approved Budget shall at all times be in form and substance acceptable to the DIP Agent and the Required DIP Lenders,[4] and approved in writing by the DIP Agent and the Required DIP Lenders in their sole and absolute discretion.  The Debtors shall provide updates to the Approved Budget and financial reporting with respect to the Debtors in accordance with the terms of the DIP Loan Documents and shall provide copies of updates to the Approved Budget to the U.S. Trustee and counsel for any Creditors' Commitee.  Funds borrowed under the DIP Credit Agreement and Cash Collateral used under this Interim Order shall be used by the Debtors in accordance with the DIP Loan Documents and this Interim Order.  The consent of the DIP

---

[4]    "Required DIP Lenders"  means "Required Lenders" as defined in the DIP Credit Agreement.

Agent, DIP Lenders and Prepetition First Lien Agent to any Approved Budget shall not be construed as a commitment to provide DIP Loans or, to the extent permitted by Paragraph 13 below, to permit the use of Cash Collateral after the occurrence of a Termination Event under this Interim Order, regardless of whether the aggregate funds shown on the Approved Budget have been expended.

(e)     Any amendments, supplements or modifications to the Approved Budget  must be consented to in writing by the DIP Agent and the Required DIP Lenders in their sole discretion prior to the implementation thereof and shall not require further notice, hearing, or court order.

(f)     The DIP Agent, the DIP Lenders, the Prepetition First Lien Agent and the Prepetition First Lien Lenders (and, for the avoidance of doubt, the Prepetition Second Lien Trustee and the Prepetition Second Lien Noteholders) (i) may assume the Debtors will comply with the Approved Budget, (ii) shall have no duty to monitor such compliance and (iii) shall not be obligated to pay (directly or indirectly from the DIP Collateral or Prepetition Collateral) any unpaid expenses incurred or authorized to be incurred pursuant to any Approved Budget.  All advances and extensions of credit shall be based upon the terms and conditions of the DIP Loan Documents, as the same may be adjusted from time to time.  Subject to the terms and conditions of this Interim Order, the DIP Agent and the DIP Lenders shall have the right but not the obligation to extend credit independent of any Approved Budget line item restrictions on loan availability set forth in the DIP Loan Documents, and all such DIP Loans shall be entitled to the benefits and protections of this Interim Order.

(g)     To the extent any court order is entered directing disgorgement of any payments made by the Debtors to the Prepetition First Lien Agent or the Prepetition First Lien Lenders either prior to or after the Petition Date, 100% of the proceeds recovered by the Debtors' estates

in connection with such order(s) directing disgorgement shall be applied first to repayment of the DIP Obligations, until the DIP Obligations are indefeasibly paid in full in cash, and then to repayment of claims in accordance with the priority scheme set forth in the Bankruptcy Code.

(h)     The Prepetition Second Lien Noteholders and the Prepetition Second Lien Trustee have consented, and are deemed to have consented pursuant to Section 4.02(b) of the Intercreditor Agreement, to the terms and provisions of the DIP Facility and the DIP Loan Documents.   Nothing in this Interim Order shall limit, abridge, waive, diminish, impair or otherwise affect the relative rights and obligations of the parties to the Intercreditor Agreement.

3.     <u>Authority to Execute and Deliver Necessary Documents</u>.

(a)     Each of the Debtors is authorized to negotiate, prepare, enter into, and deliver the DIP Loan Documents, in each case including any amendments thereto and borrow money under the DIP Facility, on an interim basis, in accordance with the terms of this Interim Order and the DIP Loan Documents.   Each of the Debtors is further authorized and directed to negotiate, prepare, enter into and deliver any UCC financing statements, pledge and security agreements, mortgages or deeds of trust, or similar documents or agreements encumbering all of the DIP Collateral and securing all of the Debtors' obligations under the DIP Loan Documents, each as may be reasonably requested by the DIP Agent, for itself or on behalf of the DIP Lenders, or the DIP Lenders.   The Prepetition Liens shall be deemed continuing liens to secure (i) the DIP Obligations, (ii) the Prepetition First Lien Obligations and the Prepetition Second Lien Obligations and (iii) the Adequate Protection Claims (as defined below) in accordance with the priorities set forth in this Interim Order.   All Prepetition First Lien Loan Documents and Prepetition Second Lien Note Documents evidencing the grant, priority and perfection of the Prepetition Liens on Prepetition Collateral (including, but not limited to, the security documents,

Mortgages and other filings related to the Oil and Gas Properties and the Control Agreements) shall (x) remain in full force and effect and continue to secure the Prepetition First Lien Obligations and the Prepetition Second Lien Obligations, (y) be deemed, upon entry of this Order, to secure, *mutatis mutandis,* (1) the DIP Obligations (including, but not limited to, the DIP Revolving Facility and the Term Loan) for the benefit of the DIP Agent and the DIP Lenders and (2) the Adequate Protection Claims, and (z) inure also to the benefit of, and shall be exercisable exclusively by, the DIP Agent, until all of the DIP Obligations have been indefeasibly paid in full, at which time exclusive control shall automatically revert to the Prepetition First Lien Agent.

(b)    Each of the Debtors is further authorized to (i) perform all of its obligations under the DIP Loan Documents, and such other agreements as may be required by the DIP Loan Documents to give effect to the terms of the financing provided for therein and in this Interim Order, and (ii) perform all acts required under the DIP Loan Documents and this Interim Order.

4.    <u>Valid and Binding Obligations</u>.  All obligations under the DIP Loan Documents shall constitute valid and binding obligations of each of the Debtors, enforceable against each of them, each of their estates, and each of their successors and assigns, jointly and severally, including, without limitation, any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case (as defined below), in accordance with their terms and the terms of this Interim Order, and no obligation, payment, transfer, or grant of a lien or security interest under the DIP Loan Documents or this Interim Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under section 502(d) of the Bankruptcy Code) or subject to any avoidance, reduction, set off, offset, recharacterization, subordination (whether equitable, contractual, or otherwise),

counterclaims, cross-claims, defenses, or any other challenges under the Bankruptcy Code or any applicable law or regulation by any person or entity. The DIP Obligations include all loans and any other indebtedness or obligations, contingent or absolute, now existing or hereafter arising, which may from time to time be or become owing by the Debtors to the DIP Lenders and the DIP Agent under the DIP Loan Documents, including without limitation all principal, interest, costs, fees, expenses and other amounts owed pursuant to the DIP Loan Documents.

5.    <u>Termination of DIP Loan Documents</u>.  Notwithstanding anything in this Interim Order to the contrary, the term of this Interim Order and the DIP Loan Documents shall expire, and the DIP Loans made pursuant to this Interim Order and the DIP Loan Documents will mature, and together with all interest thereon and any other obligations accruing under the DIP Loan Documents, will become due and payable (unless such obligations become due and payable earlier pursuant to the terms of the DIP Loan Documents and this Interim Order by way of acceleration or otherwise) on the date that is the earliest of:  (i) the 35th day after the date of entry of this Interim Order, if a Final Order has not yet been entered on the docket of the Court; (ii) the date of final indefeasible payment and satisfaction in full in cash of the DIP Obligations and the termination of the commitments under the DIP Facility; (iii) the date of substantial consummation (as defined in section 1101(2) of the Bankruptcy Code) of a confirmed plan of reorganization in the Chapter 11 Cases; (iv) the date of consummation of a sale or other disposition of all or substantially all of the assets of the Debtors, whether done by one or a series of transactions; (v) November 15, 2015; (vi) the filing by any Debtor of a motion with the Bankruptcy Court seeking the conversion of any of the Chapter 11 Cases to a case Chapter 7 case or dismissal of the Chapter 11 Cases; (vii) any date on which the DIP Loans and DIP

Obligations accelerate or otherwise become due and payable following the occurrence of any Event of Default under the DIP Loan Documents or this Interim Order.

6.    <u>Authorization for Payment of DIP Financing Fees and Expenses</u>.  All fees paid and payable, and all costs and/or expenses reimbursed or reimbursable (including, without limitation, all fees, costs and expenses referred to in the DIP Loan Documents and the DIP Agent's attorneys' fees and expenses), as set forth in the DIP Loan Documents, by the Debtors to the DIP Agent are hereby approved.  The Debtors are hereby authorized and directed to pay all such fees, costs, and expenses in accordance with the terms of the DIP Loan Documents and this Interim Order, without any requirement that any party or their counsel file any further application or other pleading, notice, or document with the Court for approval or payment of such fees, costs, or expenses.    Notwithstanding anything to the contrary herein, the fees, costs and expenses of the DIP Agent and DIP Lenders, whether incurred prior to or after the Petition Date, including, without limitation, all fees referred to in the DIP Loan Documents and all attorneys' fees and expenses, shall be deemed fully earned, non-refundable, and irrevocable as of the date of this Interim Order, except with respect to reimbursement of professional fees and expenses, which shall be subject to the fee review procedures (the "<u>Fee Review Procedures</u>") set forth below in Paragraph 6(a) and (b) below.

(a)    The payment of the fees, expenses and disbursements set forth in this paragraph of this Interim Order shall be made within ten (10) days after the receipt by the Debtors, the Committee, and the U.S. Trustee (the "<u>Review Period</u>") of invoices thereof (the "<u>Invoiced Fees</u>") (subject in all respects to applicable privilege or work product doctrines), including a summary description of the services provided and the expenses incurred by the applicable professional arising before or after the Petition Date, as applicable; <u>provided,</u>

24

however, that any such invoice (i) may be redacted to protect privileged, confidential or proprietary information and (ii) shall not be required to contain individual time detail.

(b)    The Debtors, the Committee and the U.S. Trustee may preserve their right to dispute the reasonableness of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, the Debtors, the Committee or the U.S. Trustee files with the Court a motion or other pleading, on at least ten (10) calendar days prior written notice to the DIP Agent of any hearing on such motion or other pleading, which must contain a specific basis for the objection to the Disputed Invoiced Fees and quantification of the disputed amount of the fees and expenses invoiced.  The Debtors' payment of the Invoiced Fees (including any Disputed Invoiced Fees) shall not be delayed based on any objections thereto, and the relevant professional shall only be required to disgorge amounts objected to upon being "so ordered" pursuant to a final non-appealable order of this Court.  Failure to object with specificity or to quantify the disputed amount of the invoice subject to such objection will constitute a waiver of any objection to such invoice.  None of the Invoiced Fees shall be subject to Court approval or required to be maintained in any specific format, and no recipient of any payment on account thereof shall be required to file with respect thereto any interim or final fee application with the Court.

7.    Amendments, Consents, Waivers, and Modifications.  The Debtors may enter into any amendments, consents, waivers or modifications to the DIP Loan Documents in accordance with the terms of the DIP Loan Documents without the need for further notice and hearing or any order of this Court; provided however, that any material amendment, waiver or modification shall require Court approval.   Copies of all amendments, waivers, modifications, whether or not material, shall be provided by the Debtors to the counsel to the Committee and the U.S. Trustee.

## DIP LIENS AND DIP SUPERPRIORITY CLAIMS

8.    DIP Liens & Priority.

(a)    To secure the DIP Obligations, the DIP Agent is hereby granted for the benefit of itself and the DIP Lenders, pursuant to and in accordance with sections 364(d)(1), 364(c)(2), and 364(c)(3), valid, enforceable and fully perfected (i) first priority priming liens and senior security interests, senior to the Prepetition Liens, (ii) first priority liens and security interests on property that is not otherwise encumbered by a validly perfected lien on the Petition Date, and (iii) junior priority liens and security interests (collectively, the "DIP Liens"), in each case, in and on all of the property, assets or interests in property or assets of each Debtor, and all "property of the estate" (within the meaning of the Bankruptcy Code) of each Debtor, of any kind or nature whatsoever, real or personal, tangible or intangible or mixed, now existing or hereafter acquired or created, including, without limitation, all of each Debtor's now owned or hereafter acquired right, title, and interest in and to: (x) all Oil and Gas Properties, cash, accounts, accounts receivable, inventory, property, plant and equipment, real estate, leaseholds, and shall not include avoidance actions under chapter 5 of the Bankruptcy Code ("Avoidance Actions") but, subject to entry of a Final Order, shall include all proceeds or property recovered in connection with the pursuit of Avoidance Actions; (y) the proceeds and products, whether tangible or intangible, of any of the foregoing, including proceeds of insurance covering any or all of the foregoing, and any money or other tangible or intangible property resulting from the sale, exchange, collection, or other disposition of any of the foregoing, or any portion thereof or interest therein, and the proceeds thereof; and (z) all other property and assets including, without limitation, Cash Collateral, and all cash and non-cash proceeds, rents, products, substitutions, accessions,

offspring and profits of any of the collateral described above (collectively, the "DIP Collateral"), subject only to (A) the Permitted Priority Liens, and (B) prior payment of the Carve-Out.

(b)    The DIP Liens shall be effective immediately upon the entry of this Interim Order and shall not at any time be made subject or subordinated to, or made *pari passu* with, any other lien, security interest or claim existing as of the Petition Date, or created under sections 363 or 364(d) of the Bankruptcy Code or otherwise, other than (i) the Permitted Priority Liens; and (ii) prior payment of the Carve-Out.

(c)    The DIP Liens shall be and hereby are deemed fully perfected liens and security interests, effective and perfected upon the date of this Interim Order, without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing agreements, financing statements, account control agreement or any other agreements or instruments, such that no additional actions need be taken by the DIP Agent or the DIP Lenders to perfect such interests.  Any provision of any lease, loan document, easement, use agreement, proffer, covenant, license, contract, organizational document, or other instrument or agreement that requires the consent or approval of one or more landlords, licensors or other parties, or requires the payment of any fees or obligations to any governmental entity, non-governmental entity or any other person, in order for any of the Debtors to pledge, grant, mortgage, sell, assign, or otherwise transfer any fee or leasehold interest or the proceeds thereof or other collateral, is and shall be deemed to be inconsistent with the provisions of the Bankruptcy Code, and shall have no force or effect with respect to the transactions granting the DIP Agent, for the benefit of itself and the DIP Lenders, a security interest in such fee, leasehold or other interest or other collateral or the proceeds of any assignment, sale or other transfer thereof, by any of the Debtors

in favor of the DIP Agent, for the benefit of itself and the DIP Lenders, in accordance with the terms of the DIP Credit Agreement and the other DIP Loan Documents.

9.    DIP Lenders' Superpriority Claim.  The DIP Agent, for the benefit of itself and the DIP Lenders, is hereby granted an allowed superpriority administrative expense claim (the "DIP Superpriority Claim") pursuant to section 364(c)(1) of the Bankruptcy Code in each of the Debtor's Chapter 11 Cases and in any successor case(s) under the Bankruptcy Code (including any case or cases under chapter 7 of the Bankruptcy Code, the "Successor Case(s)") for all DIP Obligations, having priority over any and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kinds specified in or arising or ordered under sections 105(a), 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 726, 1113, and 1114 and any other provision of the Bankruptcy Code or otherwise, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed DIP Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof including, without limitation, any proceeds or property recovered in connection with the pursuit of Avoidance Actions.  The DIP Superpriority Claim granted in this paragraph shall be subject and subordinate in priority of payment only to prior payment of the Carve-Out.  Except as set forth in this Interim Order, no other superpriority claims shall be granted or allowed in these Chapter 11 Cases or in any Successor Case and the DIP Superpriority Claim shall be senior in all respects to any superpriority claims granted in these Chapter 11 Cases including, without limitation, on account of any break-up fee or expense reimbursement that may be granted by the

Court in connection with any sale of the Debtors' assets and the Adequate Protection Claims (as defined below).

10.     <u>Survival of DIP Liens and DIP Superpriority Claim</u>.  The DIP Liens, DIP Superpriority Claim, and other rights and remedies granted under this Interim Order to the DIP Agent, for the benefit of itself and the DIP Lenders, shall continue in this and any Successor Case(s) and shall be valid and enforceable against any trustee appointed in any or all of the Debtors' Chapter 11 Cases and/or upon the dismissal of any or all of the Debtor's Chapter 11 Cases or any Successor Case(s) and such liens and security interests shall maintain their priority as provided in this Interim Order until all the DIP Obligations have been indefeasibly paid in full in cash and the DIP Lenders' commitments have been terminated in accordance with the DIP Loan Documents.

## ADEQUATE PROTECTION

11.     <u>Adequate Protection for Prepetition First Lien Lenders</u>.  Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection for any diminution in the value of the Prepetition Collateral resulting from, among other things: (i) the incurrence of the DIP Obligations secured by a priming DIP Lien, (ii) the use of Cash Collateral, (iii) the imposition of the automatic stay, (iv) the agreement of the Prepetition First Lien Agent and Prepetition First Lien Lenders to subordinate their right to receive payment from the proceeds Prepetition Collateral to the prior payment of the Carve-Out, or (v) otherwise (collectively, the "<u>Prepetition First Lien Diminution Claim</u>"), the Prepetition First Lien Agent and the Prepetition First Lien Lenders are hereby granted (in each case subject to the DIP Liens, the DIP Superpriority Claim, and prior payment of the Carve-Out) the following ((a) through (f) below shall be referred to collectively as the "<u>Prepetition First Lien Adequate Protection Obligations</u>"):

(a)    <u>Prepetition First Lien Adequate Protection Liens</u>.  To secure the Prepetition First Lien Diminution Claim, the Prepetition First Lien Agent, for itself and for the benefit of the Prepetition First Lien Lenders, is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, and other agreements or instruments) valid, perfected, postpetition security interests and liens (the "<u>Prepetition First Lien Replacement Liens</u>") in and on all of the DIP Collateral, <u>provided</u>, <u>however</u>, that the Prepetition First Lien Replacement Liens shall only be and remain subject and subordinate to (i) the DIP Liens and/or payment of any DIP Obligations on account thereof, (ii) the Permitted Priority Liens, (iii) prior payment of the Carve-Out and (iv) the Prepetition Senior Liens.  Subject to paragraph 15 below, the Prepetition First Lien Replacement Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Chapter 11 Cases or any Successor Case, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Chapter 11 Cases or any Successor Case.

(b)    <u>Prepetition First Lien Adequate Protection Superpriority Claims</u>.  As further adequate protection for the Prepetition First Lien Diminution Claim, the Prepetition First Lien Agent and the Prepetition First Lien Lenders are hereby granted a superpriority claim with priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c), 552(b) (subject to entry of a Final Order), 726, 1113 and 1114 and any other provision of the

Bankruptcy Code (the "Prepetition First Lien Adequate Protection Superpriority Claim"), which allowed Prepetition First Lien Adequate Protection Superpriority Claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof including, without limitation, any Avoidance Action proceeds. The Prepetition First Lien Adequate Protection Superpriority Claim shall be subordinate and subject only to the DIP Superpriority Claim, prior payment of the Carve-Out and the Prepetition First Lien Obligations.

(c)     Fees and Expenses.  As further adequate protection for the Prepetition First Lien Diminution Claim, upon the closing of the DIP Facility, the Debtors shall pay in cash to the Prepetition First Lien Agent all accrued or incurred and unpaid fees, costs and expenses in respect of the Prepetition First Lien Obligations and all other accrued or incurred and unpaid fees, costs and disbursements, accrued or incurred (whether before or after the Petition Date including those incurred prior to the Petition Date which remain unpaid as of the Petition Date) under any of the Prepetition First Lien Loan Documents, as applicable, as of such date.  During these Chapter 11 Cases, the Prepetition First Lien Agent and the Prepetition First Lien Lenders shall also receive current cash payment of their fees, costs and expenses, including all reasonable fees and disbursements of its counsel, financial advisors and all other professionals or consultants retained by the Prepetition First Lien Agent or the Prepetition First Lien Lenders with services performed prior to and during these Chapter 11 Cases to the extent such fees are payable under the Prepetition First Lien Loan Documents.  The payment of the fees, expenses and disbursements set forth in this paragraph of this Interim Order shall be made subject to the Fee Review Procedures set forth in Paragraph 6(a) and (b) above.

(d)     Interest.  As further adequate protection for the Prepetition First Lien Diminution Claim,  the Debtors shall pay interest on the Prepetition First Lien Obligations in cash, as and

31

when such interest is payable under the Prepetition First Lien Loan Documents, at the non-default rate until such time as the Prepetition First Lien Obligations are either (i) indefeasibly paid in full in cash or (ii) converted into a post-petition Term Loan.

(e)    Right to Credit Bid.    Unless the Court for cause orders otherwise pursuant to section 363(k) of the Bankruptcy Code and subject to the provisions of the Restructuring Support Agreement, the DIP Agent, on behalf of the DIP Lenders, and the Prepetition First Lien Agent, on behalf of the Prepetition First Lien Lenders, shall each have the right to "credit bid" their respective claims against the Debtors up to the full amount of (x) for the Prepetition First Lien Agent, the Prepetition First Lien Obligations and (y) for the DIP Agent, the DIP Obligations, during any sale of all or any portion of the DIP Collateral or Prepetition Collateral, as applicable, or any deposit or liquidated damages in connection with such sale, including, without limitation, any sales occurring pursuant to section 363 of the Bankruptcy Code or included as part of any reorganization plan subject to confirmation under section 1129(b)(2)(A)(iii) of the Bankruptcy Code.    For purposes of any such bid or deposit, the portion of the Prepetition First Lien Obligations or DIP Obligations  subject to a credit bid by the Prepetition First Lien Agent or DIP Agent, as applicable, shall be treated for all purposes as the equivalent of  a cash bid, cash deposit or cash payment.    Unless the Court for cause orders otherwise pursuant to section 363(k) of the Bankruptcy Code, the DIP Agent and the Prepetition First Lien Agent shall each have the absolute right to assign, sell, or otherwise dispose of its respective right to credit bid in connection with any credit bid by or on behalf of the DIP Lenders and the Prepetition First Lien Lenders, respectively, or any acquisition entity or joint venture formed in connection with such bid.

(f)      _Further Adequate Protection._  Nothing in this Interim Order shall, or shall be deemed to, limit, abridge or otherwise affect the rights of the Prepetition First Lien Agent or Prepetition First Lien Lenders to request at any time that the Court provide additional or further protection of their respective interests in the Prepetition Collateral (including the Cash Collateral), or to seek further or additional adequate protection in the event the adequate protection provided herein proves to be inadequate.  The Prepetition First Lien Agent and the Prepetition First Lien Lenders consent to the Debtors' use of Cash Collateral and the priming provided for herein; _provided,_ _however,_ that consent to such priming, such use of Cash Collateral, and the sufficiency of the adequate protection provided for herein is expressly conditioned upon the entry of this Interim Order (in form and substance satisfactory to the Prepetition First Lien Agent and the Prepetition First Lien Lenders) relating to the DIP Loan Documents and DIP Loans as set forth herein, and such consent shall not be deemed to extend to any replacement or other postpetition financing other than the DIP Loans provided under the DIP Loan Documents; _provided,_ _further,_ that such consent shall be of no force and effect in the event this Interim Order is not entered and the DIP Loan Documents and DIP Loans as set forth herein are not approved.

12.      _Adequate Protection for Prepetition Second Lien Noteholders._  As adequate protection in respect of any diminution in the value of the Prepetition Second Lien Trustee's interest in the Prepetition Second Lien Collateral (the "_Prepetition Second Lien Diminution Claim_"), the Prepetition Second Lien Trustee and the Prepetition Second Lien Noteholders are hereby granted the following adequate protection ((a) and (b) below shall be referred to collectively as the "_Prepetition Second Lien Adequate Protection Obligations_"):

(a)    Prepetition Second Lien Replacement Liens.  To secure the Prepetition Second Lien Diminution Claim, the Prepetition Second Lien Trustee (on behalf of the Prepetition Second Lien Noteholders) is hereby granted (effective and perfected upon the date of this Interim Order and without the necessity of execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements, account control agreements and other agreements or instruments) valid, perfected, postpetition security interests in and liens (the "Prepetition Second Lien Replacement Liens", and collectively with the Prepetition First Lien Replacement Liens, the "Replacement Liens") on all of the DIP Collateral, provided, however, that, notwithstanding anything to the contrary, the Prepetition Second Lien Replacement Liens shall only be and remain subject and subordinate to (i) the DIP Liens and/or payment of any DIP Loan Obligations on account thereof, (ii) the Permitted Priority Liens, (iii) prior payment of the Carve-Out, (iv) the Prepetition Senior Liens and (v) the Prepetition First Lien Replacement Liens.

(b)    Prepetition Second Lien Noteholders Adequate Protection Superpriority Claim.  As further adequate protection for the Prepetition Second Lien Diminution Claim, the Prepetition Second Lien Trustee (on behalf of the Prepetition Second Lien Noteholders) is hereby granted a superpriority claim with priority over all other administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kind specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to entry of a Final Order), 507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 and any other provision of the Bankruptcy Code (the "Prepetition Second Lien Adequate Protection Superpriority Claim" and, collectively, with the

Prepetition First Lien Adequate Protection Superpriority Claim, the "Adequate Protection Claims"). The Prepetition Second Lien Adequate Protection Superpriority Claim shall be subordinate only to (i) the DIP Superpriority Claim, (ii) prior payment of the Carve-Out, (iii) payment of the Prepetition First Lien Obligations (iv) the Prepetition First Lien Adequate Protection Superpriority Claim and (v) payment of any Prepetition First Lien Adequate Protection Obligations.

## CARVE-OUT; RESTRICTIONS ON USE OF FUNDS

13.     Carve-Out.

(a)     The DIP Liens, the DIP Superpriority Claim, the Replacement Liens, the Adequate Protection Claims and the Prepetition Liens shall be subject and subordinate only to prior payment of: (i) fees payable to the United States Trustee pursuant to 28 U.S.C. § 1930(a)(6) in such amounts as agreed to by the U.S. Trustee or determined by order of the Court or to the Clerk of the Bankruptcy Court (the "Case Administration Fees"), (ii) unpaid professional fees and expenses ("Professional Fees") payable to any legal or financial advisors retained by the Debtors or any Creditors' Committee pursuant to sections 327, 328, 363 or 1103 of the Bankruptcy Code, as applicable (the "Case Professionals"), that are incurred or accrued prior to the date on which the DIP Agent provides written notice to the Debtors and the Creditors' Committee of the occurrence of an Event of Default under the DIP Credit Agreement (a "Termination Event"), but solely if, as and to the extent such Professional Fees are or have been provided for in, and are consistent with, the Approved Budget and are ultimately allowed by the Court pursuant to Section 330 of the Bankruptcy Code, and (iii) unpaid Professional Fees incurred or accrued on or after the date on which the DIP Agent provides written notice to the Debtors and the Creditors' Committee of the occurrence of a Termination Event, in an aggregate

amount not to exceed $500,000 (collectively, the "Carve-Out").  Subject to the immediately preceding sentence, so long as no Termination Event has occurred, the Debtors shall be permitted to pay Case Administration Fees and Professional Fees allowed and payable by order under Bankruptcy Code Sections 330, 331 and 503, as provided in the DIP Loan Documents and the Approved Budget, provided that any such payment shall be subject to entry of a final order of the Court on final application for allowance of fees and expenses to be filed for each Case Professional and any such payment shall not reduce the Carve-Out.  Any payment of Carve-Out expenses incurred after the occurrence of a Termination Event, including any payment of Professional Fees, shall permanently reduce the Carve-Out on a dollar-for-dollar basis.  The DIP Lenders' obligation to permit the use of their Cash Collateral to fund or to otherwise pay the Carve-Out expenses may be reserved against borrowing availability under the DIP Loan Documents and, once funded and paid, shall be added to and made part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code and applicable law, as applicable. Without limiting the generality of the foregoing, (A) no person or entity entitled to payment from the Carve-Out shall be entitled to sell or otherwise dispose, or seek or object to the sale or other disposition, of any DIP Collateral or Prepetition Collateral and (B) the Carve-Out shall not include, apply to, or be available for any success fee or similar payment to any professionals or other persons, including without limitation any such fee payable in connection with a restructuring or asset disposition with respect to any of the Debtors or otherwise.

(b)     Nothing contained in this Interim Order shall be construed:  (i) to exempt those persons hereafter receiving interim compensation payments or reimbursement of expenses pursuant to any such Bankruptcy Court-approved procedure from the applicable provisions of

bankruptcy law, including the requirements that such compensation or reimbursement be allowed on a final basis after the filing of appropriate fee applications, and, if applicable, any subsequent order of this Court requiring that such payments be disgorged; (ii) as consent to the allowance of any fees and expenses referred to above; (iii) to increase the Carve-Out if incurred or allowed Professional Fees are higher in fact than the fees and disbursements of Case Professionals set forth in the Approved Budget; and (iv) to affect any right of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee, the Prepetition Second Lien Noteholders or any other party-in-interest to object to the reasonableness of such amounts. Other than the funding of the Carve-Out with the proceeds of the DIP Facility as provided herein and in the DIP Loan Documents, the DIP Agent and the DIP Lenders shall not be responsible for the payment or reimbursement of any fees or disbursements of any Case Professionals incurred in connection with these Chapter 11 Cases, any Successor Cases, or otherwise.

14.    Restrictions on Use of Funds.  Notwithstanding anything in this Interim Order or the DIP Loan Documents to the contrary, no proceeds of the DIP Facility, any DIP Collateral or Prepetition Collateral (including, without limitation, Cash Collateral) or any portion of the Carve-Out may be used to pay any claims for services rendered by any professionals retained by the Debtors, any creditor or party in interest, a Creditors' Committee, any trustee appointed under these Chapter 11 Cases or any Successor Cases, or any other party to (a) request authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code or otherwise, other than from the DIP Agent or DIP Lenders, unless the proceeds of such loans or accommodations are or will be sufficient, and will be used, to indefeasibly pay in full in cash all DIP Obligations, the Prepetition First Lien Obligations, and

Prepetition First Lien Adequate Protection Obligations, or (b) investigate (except as set forth in

paragraph 15 below), assert, join, commence, support or prosecute any action or claim, counter-

claim, action, proceeding, application, motion, objection, defense, or other contested matter

seeking any order, judgment, determination or similar relief against, or adverse to the interests

of, in any capacity, the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the

Prepetition First Lien Lenders, the Prepetition Second Lien Trustee or the Prepetition Second

Lien Noteholders or any of their respective officers, directors, employees, agents, attorneys,

affiliates, assigns, or successors, with respect to any transaction, occurrence, omission, or action,

including, without limitation, (i) any Avoidance Actions or other actions arising under chapter 5

of the Bankruptcy Code; (ii) any action relating to any act, omission or aspect of the relationship

between or among any of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the

Prepetition First Lien Lenders, the Prepetition Second Lien Trustee, and the Prepetition Second

Lien Noteholders, on the one hand, and the Debtors or any of their affiliates, on the other; (iii)

any action with respect to the validity and extent of the DIP Obligations, the Prepetition First

Lien Obligations, or the Prepetition Second Lien Obligations, or the validity, extent, and priority

of the DIP Liens, the Prepetition Liens or the Replacement Liens; (iv) any action seeking to

invalidate, set aside, avoid or subordinate, in whole or in part, the DIP Liens, the Prepetition

Liens or the Replacement Liens; (v) any action that has the effect of preventing, hindering or

delaying (whether directly or indirectly) the DIP Agent, the DIP Lenders, the Prepetition First

Lien Agent, Prepetition First Lien Lenders the Prepetition Second Lien Trustee or the Prepetition

Second Lien Noteholders in respect of the enforcement of their liens and security interests in the

DIP Collateral, Cash Collateral or the Prepetition Collateral; (vi) pay any Claim of a Creditor (as

such terms are defined in the Bankruptcy Code) without the prior written consent of the DIP

Agent, the Prepetition First Lien Agent or the Prepetition Second Lien Trustee; and/or (vii) use or seek to use Cash Collateral or sell or otherwise dispose of DIP Collateral, unless otherwise permitted hereby or by the DIP Loan Documents. Notwithstanding the foregoing, up to $75,000 in the aggregate of the DIP Facility, DIP Collateral, Cash Collateral, Prepetition Collateral and Carve-Out may be used by a Creditors' Committee to investigate the Prepetition First Lien Obligations, the Prepetition Second Lien Obligations, the Prepetition Liens and/or claims against the Releasees prior to the Challenge Period Termination Date (as each is defined below).

15.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

(a)    The Debtors' acknowledgements and stipulations set forth in Paragraph F above (the "<u>Debtors' Stipulations</u>") shall be binding upon the Debtors in all circumstances upon entry of this Interim Order.

(b)    The Debtors' Stipulations shall also be binding upon each other party in interest, including any Creditors' Committee unless such Creditors' Committee or any other party in interest having standing, including any Chapter 11 trustee (or if the Chapter 11 Cases are converted to cases under chapter 7 prior to the expiration of the Challenge Period (as defined below), the chapter 7 trustee in such Successor Case(s)): (a) commences a Challenge (as defined below) by (x) with respect to a Creditors' Committee, sixty (60) calendar days from the formation of a Creditors' Committee, and (y) with respect to other parties in interest with requisite standing other than the Debtors or a Creditors' Committee, seventy five (75) calendar days following the date of entry of the Interim Order (such time period established by clauses (x) and (y), shall be referred to as the "<u>Challenge Period</u>") and (b) obtains a final, non-appealable order in favor of such party in interest sustaining any such Challenge in any such timely-filed contested matter, adversary proceeding, or other action.

(c)     A "Challenge" means (A) a contested matter, adversary proceeding, or other action or "claim" (as defined in the Bankruptcy Code) challenging or otherwise objecting to the admissions, stipulations, findings, or releases included in the Debtors' Stipulations, or (B) a contested matter, adversary proceeding, or other action against any or all of the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee or the Prepetition Second Lien Noteholders in connection with or related to the Prepetition First Lien Obligations or the Prepetition Second Lien Obligations, or the actions or inactions of any of the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee or the Prepetition Second Lien Noteholders arising out of or related to the Prepetition First Lien Obligations, the Prepetition Second Lien Obligations or otherwise, including, without limitation, any claim against the Prepetition First Lien Agent, any or all of the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee or any or all of the Prepetition Second Lien Noteholders in the nature of a "lender liability" cause of action, setoff, counterclaim, or defense to the Prepetition First Lien Obligations (including, but not limited to, those under sections 506, 544, 547, 548, 549, 550, and/or 552 of the Bankruptcy Code ((A) and (B) collectively, the "Challenges" and, each individually, a "Challenge").

(d)     With respect to any party interest that (i) fails to raise a proper Challenge within the Challenge Period or (y) raises a proper Challenge within the Challenge Period which is fully and finally adjudicated in favor of Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee or the Prepetition Second Lien Noteholders, as applicable, then for all purposes in these Chapter 11 Cases and any Successor Case(s), (i) all payments made to or for the benefit of the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee or the Prepetition Second Lien Noteholders, as

applicable, pursuant to, or otherwise authorized by, this Interim Order or otherwise (whether made prior to, on, or after the Petition Date) shall be indefeasible and not be subject to counterclaim, set-off, subordination, recharacterization, defense, or avoidance, (ii) any and all such Challenges by any party in interest (including, without limitation, a Creditors' Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in the Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case) shall be deemed to be forever released, waived, and barred, (iii) the Prepetition First Lien Obligations and the Prepetition Second Lien Obligations, as applicable, shall be deemed to be a fully allowed and fully secured claim within the meaning of section 506 of the Bankruptcy Code, not subject to counterclaim, setoff, subordination, recharacterization, reduction, defense or avoidance, (iv) any and all pre-petition claims or causes of action against the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee or the Prepetition Second Lien Noteholders, as applicable, relating in any way to the Debtors shall be forever waived and released by the Debtors, the Debtors' estates and all creditors, interest holders, a Creditors' Committee and other parties in interest in the Chapter 11 Cases and any Successor Case and (v) all matters not subject to the Challenge, including, without limitation, all findings, the Debtors' Stipulations in paragraph F, all waivers, releases set forth herein, affirmations and other stipulations as to the priority, extent and validity as to the claims, liens and interests of the Prepetition First Lien Lenders, the Prepetition First Lien Agent, the Prepetition Second Lien Trustee and the Prepetition Second Lien Noteholders, as applicable, shall be of full force and effect upon the Debtors, the Debtors' estates and all creditors, equity interest holders, a Creditors' Committee and other parties in interest in the Chapter 11 Cases and any Successor Case.

16.  <u>Prohibition on Granting of Additional Liens and Interests</u>.  No liens, claims, interests or priority status, other than the Carve-Out and the Permitted Priority Liens, having a lien or administrative priority superior to or *pari passu* with that of the DIP Liens, the DIP Superpriority Claim, the Prepetition First Lien Adequate Protection Superpriority Claims or the Prepetition First Lien Replacement Liens granted by this Interim Order, shall be granted while any portion of the DIP Obligations or Prepetition First Lien Obligations remain outstanding, or any commitment under the DIP Loan Documents or Prepetition First Lien Loan Documents remains in effect, without the prior written consent of the DIP Agent and the Prepetition First Lien Agent.

17.  <u>Release</u>.  The release, discharge, waivers, settlements, compromises, and agreements set forth in this paragraph 17 shall be deemed effective upon entry of the Interim Order, and subject only to the rights set forth in paragraph 15 above.  The Debtors, on behalf of themselves and their estates (including any successor trustee or other estate representative in these Chapter 11 Cases or any Successor Case) forever and irrevocably (a) release, discharge, and acquit the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders and each of their respective former, current or future officers, employees, directors, agents, representatives, owners, members, partners, financial advisors, legal advisors, shareholders, managers, consultants, accountants, attorneys, affiliates, and predecessors in interest (collectively, the "<u>Releasees</u>") of and from any and all claims, demands, liabilities, responsibilities, disputes, remedies, causes of action, indebtedness, and obligations, of every type, including, without limitation, any claims arising from any actions relating to any aspect of the relationship between the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent or the Prepetition First Lien Lenders, on the one hand, and the Debtors and their affiliates, on the other

hand, including any equitable subordination claims or defenses, with respect to or relating to the Prepetition First Lien Obligations, the Prepetition Senior Liens, the Prepetition First Lien Loan Documents, the DIP Facility, the DIP Liens, the DIP Loan Documents, the Debtors' attempts to restructure the Prepetition First Lien Obligations, any and all claims and causes of action arising under title 11 of the United States Code, and any and all claims regarding the validity, priority, perfection or avoidability of the liens or secured claims of the Prepetition First Lien Agent and the Prepetition First Lien Lenders; and (b) waive any and all defenses (including, without limitation, offsets and counterclaims of any nature or kind) as to the validity, perfection, priority, enforceability and non-avoidability of the Prepetition First Lien Obligations and the Prepetition Senior Liens.

## REMEDIES; MODIFICATION OF AUTOMATIC STAY

18.    <u>Remedies and Stay Modification.</u>

(a)    The automatic stay provisions of section 362 of the Bankruptcy Code are, to the extent applicable, vacated and modified without further application or motion to, or order from, the Court, to the extent necessary so as to permit the following:

(i)    whether or not a Default or an Event of Default under the DIP Loan Documents or a default by any of the Debtors of any of their obligations under this Interim Order has occurred (A) to require all cash, checks or other collections or proceeds from DIP Collateral received by any of the Debtors to be deposited in accordance with the requirements of the DIP Loan Documents, and to apply any amounts so deposited and other amounts paid to or received by the DIP Agent and the DIP Lenders under the DIP Loan Documents in accordance with any requirements of the DIP Loan Documents, (B) the right to file or record any financing statements, mortgages or other instruments or other documents to evidence the security interests in and liens upon the DIP Collateral, (C) the right to charge and collect any interest, fees, costs

43

and other expenses accruing at any time under the DIP Loan Documents as provided therein, and (D) the right to give the Debtors any notice provided for in any of the DIP Loan Documents or this Interim Order;

(ii)    Subject to paragraph 18(a)(iv) below, the automatic stay provisions of Section 362 of the Bankruptcy Code are vacated and modified without the need for further Court order to permit the DIP Agent, for itself and on behalf of the DIP Lenders, or the DIP Lenders, as applicable, upon the occurrence and during the continuance of an Event of Default, and without any interference from the Debtors or any other party interest, to (I)(A) cease making DIP Loans and/or suspend or terminate the commitments under the DIP Loan Documents, and (B) declare all DIP Obligations immediate due and payable, and (II) subject to three (3) business days' prior written notice (which may be delivered by electronic mail) (the "Remedies Notice Period") to the Debtors, their counsel, counsel to any Creditors' Committee and the U.S. Trustee, to exercise all other rights and remedies provided for in the DIP Loan Documents, this Interim Order or under other applicable bankruptcy and non-bankruptcy law including, without limitation, the right to (A) in the case of the DIP Agent, take any actions reasonably calculated to preserve or safeguard the DIP Collateral or to prepare the DIP Collateral for sale; (B) in the case of the DIP Agent, foreclose or otherwise enforce the DIP Liens on any or all of the DIP Collateral; (C) set off any amounts held as Cash Collateral (including, without limitation, in any Cash Collateral account held for the benefit of the DIP Agent and DIP Lenders); and/or (D) exercise any other default-related rights and remedies under the under the DIP Loan Documents or this Interim Order.  The Remedies Notice Period shall run concurrently with any notice period provided for under the DIP Loan Documents.

(iii)     Immediately upon the occurrence of an Event of Default under the DIP Credit Agreement or any of their obligations under this Interim Order, the DIP Agent, for itself and the benefit of the DIP Lenders, may charge interest at the default rate set forth in the DIP Loan Documents without being subject to the Remedies Notice Period.

(iv)     The automatic stay of Section 362(a) of the Bankruptcy Code, to the extent applicable, shall be deemed terminated without the necessity of any further action by the Court in the event that the Debtors, the Creditors' Committee, if any, and/or the U.S. Trustee have not obtained an order from this Court to the contrary prior to the expiration of the Remedies Notice Period.  During the Remedies Notice Period, the Debtors shall not be permitted to use any Cash Collateral or any DIP Loan proceeds except to pay expenses reasonably necessary to preserve the Debtors' going concern value.  The Debtors, a Creditors' Committee, if any, and/or the U.S. Trustee shall have the burden of proof at any hearing on any request by them to reimpose or continue the automatic stay of Section 362(a) of the Bankruptcy Code or to obtain any other injunctive relief, and the sole issue the Debtors may assert at any hearing to re-impose the automatic stay or to obtain any other injunctive or other relief shall be limited to whether or not an Event of Default has occurred and is continuing under the DIP Loan Documents.

(v)     If the DIP Agent and/or DIP Lenders are entitled, and have elected in accordance with the provisions hereof, to enforce their respective liens or security interests or exercise any other default-related remedies following expiration of the Remedies Notice Period, the Debtors shall cooperate with the DIP Agent or the DIP Lenders in connection with such enforcement by, among other things, (A) providing at all reasonable times access to the Debtors' premises to representatives or agents of the DIP Agent or the DIP Lenders (including any collateral liquidator or consultant), (B) providing the DIP Agent or the DIP Lenders and their

representatives or agents, at all reasonable times access to the Debtors' books and records and any information or documents requested by the DIP Agent or the DIP Lenders or their respective representatives, (C) performing all other obligations set forth in the DIP Loan Documents, and (D) taking reasonable steps to safeguard and protect the DIP Collateral, and the Debtors shall not otherwise interfere with or actively encourage others to interfere with the DIP Agent's or the DIP Lenders' enforcement of rights.

(vi)    Upon the occurrence and during the continuance of an Event of Default under the DIP Loan Documents or a violation of the terms of this Interim Order, the DIP Agent and the DIP Lenders shall have no further obligation to provide financing under the DIP Loan Documents and the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent and the Prepetition First Lien Lenders shall have no further obligation to permit the continued use of Cash Collateral.

(vii)    Upon the occurrence and during the continuance of an Event of Default under the DIP Loan Documents or a violation of the terms of this Interim Order,  the DIP Lenders may at all times continue to collect and sweep cash as provided herein or as provided in the DIP Loan Documents.

(viii)    This Court shall retain exclusive jurisdiction to hear and resolve any disputes and enter any orders required by the provisions of this Interim Order and relating to the application, re-imposition or continuance of the automatic stay of Section 362(a) of the Bankruptcy Code or other injunctive relief requested.

## **MISCELLANEOUS**

19.    <u>Limitation on Section 506(c) Claims</u>.  Subject to entry of a Final Order, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any Successor Case at any time shall be surcharged against, and no person may seek to surcharge

any costs or expenses of administration against, the DIP Agent, the DIP Lenders, the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee, the Prepetition Second Lien Noteholders, or any of their respective claims, the Carve-Out, or the DIP Collateral, pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise, without the prior written consent, as applicable, of the DIP Agent or the DIP Lenders.  No action, inaction or acquiescence by the DIP Agent or the DIP Lenders shall be deemed to be or shall be considered evidence of any alleged consent to a surcharge against the DIP Agent or the DIP Lenders, any of their respective claims, the Carve-Out, or the DIP Collateral.

20.     <u>No Marshaling</u>.  The DIP Agent, the DIP Lenders, the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee and the Prepetition Second Lien Noteholders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral.  Without limiting the generality of the immediately preceding sentence, no party shall be entitled, directly or indirectly, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of the DIP Collateral after an Event of Default under the DIP Loan Documents, or termination or breach under the DIP Loan Documents.

21.     <u>Equities of the Case Waiver</u>.  Subject to entry of a Final Order, the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee, and the Prepetition Second Lien Noteholders shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  No person may assert an "equities of the case" claim under section 552(b) of the Bankruptcy Code against the Prepetition First Lien Agent or the Prepetition First Lien Lenders with respect to proceeds, product, offspring or profits of any of the DIP Collateral or the Prepetition Collateral.

47

22.    <u>Additional Perfection Measures</u>.  The DIP Liens and the Replacement Liens shall be perfected by operation of law immediately upon entry of this Interim Order.  None of the Debtors, the DIP Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee or the Prepetition Second Lien Noteholders shall be required to enter into or obtain landlord waivers, mortgagee waivers, bailee waivers, warehouseman waivers or other waiver or consent, or to file or record financing statements, mortgages, deeds of trust, leasehold mortgages, control agreements, notices of lien or similar instruments in any jurisdiction (including, but not limited to, Mortgages relating to the Oil and Gas Properties, Control Agreement relating to bank accounts, trademark, copyright, trade name or patent assignment filings with the United States Patent and Trademark Office, Copyright Office or any similar agency with respect to intellectual property, or filings with any other federal agencies/authorities), or obtain consents from any licensor or similarly situated party-in-interest, or take any other action in order to validate and to perfect the DIP Liens or the Replacement Liens.

(a)    If the DIP Agent, in its sole discretion, chooses to take any action to obtain consents from any landlord, licensor or other party in interest, to file mortgages, financing statements, notices of lien or similar instruments, or to otherwise record or perfect such security interests and liens, the DIP Agent is hereby authorized, but not directed to, take such action or to request that Debtors take such action on its behalf (and Debtors are hereby authorized to take such action) and:

(i)    any such documents or instruments shall be deemed to have been recorded and filed as of the time and on the date of entry of this Interim Order; and

(ii)    no defect in any such act shall affect or impair the validity, perfection and enforceability of the liens granted hereunder.

(b)    In lieu of obtaining such consents or filing any such mortgages, financing statements, notices of lien or similar instruments, the DIP Agent may, in its sole discretion, choose to file a true and complete copy of this Interim Order in any place at which any such instruments would or could be filed, together with a description of the Collateral, and such filing by the DIP Agent shall have the same effect as if such mortgages, deeds of trust, financing statements, notices of lien or similar instruments had been filed or recorded at the time and on the date of entry of this Interim Order.

23.    <u>Application of Collateral Proceeds</u>.  To the extent required by this Interim Order and the DIP Loan Documents, after an Event of Default, the Debtors are hereby authorized and directed to remit to the DIP Agent or the DIP Lenders, as the case may be, subject to the payment of or reserve for the Carve-Out, one-hundred percent (100%) of all collections on, and proceeds of, the DIP Collateral, and the automatic stay provisions of section 362 of the Bankruptcy Code are hereby modified to permit the DIP Agent or the DIP Lenders to retain and apply all collections, remittances, and proceeds of the DIP Collateral in accordance with the DIP Loan Documents.  In furtherance of the foregoing, (a) all cash, securities, investment property and other items of any Debtor deposited with any bank or other financial institution shall be subject to a perfected, first priority security interest in favor of the DIP Agent (or its designee), (b) upon the expiration of the Remedies Notice Period, each bank or other financial institution with an account of any Debtor is hereby authorized and instructed to comply at all times with any instructions originated by the DIP Agent (or its designee) to such bank or financial institution directing the disposition of cash, securities, investment property and other items from time to time credited to such account, without further consent of any Debtor, including, without limitation, any instruction to send to the DIP Agent (or its designee) by wire transfer (to such

account as the DIP Agent (or its designee) shall specify, or in such other manner as the DIP

Agent (or its designee) shall direct) all such cash, securities, investment property and other items

held by it, and (c) any deposit account control agreement executed and delivered by any bank or

other financial institution, any Debtor and the Prepetition First Lien Agent prior to the Petition

Date in connection with the Prepetition First Lien Loan Documents shall establish co-control in

favor of the DIP Agent of any and all accounts subject thereto and any and all cash, securities,

investment property and other items of any Debtor deposited therein to secure the DIP

Obligations (provided that primary control rights shall vest in the DIP Agent), and all rights

thereunder in favor of the Prepetition First Lien Agent shall inure also to the benefit of, and shall

be exercisable exclusively by, the DIP Agent, until all of the DIP Obligations have been

indefeasibly paid in full, at which time exclusive control shall automatically revert to the

Prepetition First Lien Agent.

24.    Access to Collateral.  Notwithstanding anything contained herein to the contrary,

and without limiting any other rights or remedies of the DIP Agent or the DIP Lenders contained

in this Interim Order or the DIP Loan Documents, or otherwise available at law or in equity, and

subject to the terms of the DIP Loan Documents, upon three (3) business days' written notice to

the landlord, lienholder, licensor or other third party owner of any leased or licensed premises or

intellectual property that an Event of Default under the DIP Loan Document or a default by any

of the Debtors of any of their obligations under this Interim Order has occurred and is

continuing, the DIP Agent or the DIP Lenders (i) may, unless otherwise provided in any separate

agreement by and between the applicable landlord or licensor and the DIP Agent or the DIP

Lenders (the terms of which shall be reasonably acceptable to the parties thereto), enter upon any

leased or licensed premises of any of the Debtors for the purpose of exercising any remedy with

respect to DIP Collateral located thereon and (ii) shall be entitled to all of the Debtors' rights and privileges as lessee or licensee under the applicable lease or license and to use any and all trademarks, trade names, copyrights, licenses, patents or any other similar assets of the Debtors, which are owned by or subject to a lien of any third party and which are used by the Debtors in their businesses, in either the case of subparagraph (i) or (ii) of this paragraph, without interference from lienholders, landlords or licensors thereunder, subject to such lienholders, landlords or licensors rights under applicable law.  Nothing herein shall require the Debtors, the DIP Agent or the DIP Lenders to assume any lease or license under section 365(a) of the Bankruptcy Code as a precondition to the rights afforded to the DIP Agent and the DIP Lenders in this paragraph.

25.    Cash Management Systems.  The Debtors are authorized to maintain their cash management system in a manner consistent with the DIP Loan Documents, this Interim Order, and the order of this Court approving the maintenance of the Debtors' cash management system, provided, however, that such order is and remains at all times on terms and conditions acceptable to the DIP Agent and such order is not inconsistent with the terms specified herein or the DIP Loan Documents.

26.    Delivery of Documentation.  The Debtors (and/or their legal or financial advisors) shall deliver to the DIP Agent, counsel to the DIP Agent, and any financial advisors to the DIP Agent, all financial reports, Approved Budgets, forecasts, and all other legal or financial documentation, pleadings, and/or filings that are either (i) required to be provided (by the Debtors and/or their legal or financial advisors) to the DIP Agent, the DIP Lenders, and/or the DIP Agent's legal and financial advisors pursuant to the DIP Loan Documents, or (ii) reasonably requested by the DIP Agent and/or the DIP Lenders (or their legal and financial advisors).

27.    <u>Access to Books and Records</u>.  The Debtors (and/or their legal and financial advisors) will (a) keep proper books, records and accounts in accordance with GAAP in which full, true and correct entries shall be made of all dealings and transactions in relation to their business and activities, (b) timely file all current, quarterly, and annual reports required to be filed with the SEC, (c) cooperate, consult with, and provide to the DIP Agent and the DIP Lenders all such information as required or allowed under the DIP Loan Documents, the provisions of this Interim Order or that is afforded to the Committee and/or the Committee's respective legal or financial advisors, (d) permit, upon one (1) business days' notice and during normal business hours, representatives of the DIP Agent and/or the DIP Lenders to visit and inspect any of their respective properties, to examine and make abstracts or copies from any of their respective books and records, to conduct a collateral audit and analysis of their respective inventory and accounts, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations and accounts with their respective officers, employees and independent public accountants as often as may reasonably be desired, and (e) permit representatives of the DIP Agent and the DIP Lenders to consult with and advise the Debtors' management on matters concerning the general status of the Debtors' business, financial condition and operations.

28.    <u>Lenders Not Responsible Persons</u>.  In (a) making the decision to make the DIP Loans; (b) administering the DIP Loans; (c) extending other financial accommodations to the Debtors under the DIP Loan Documents; (d) making the decision to make the loans and financial accommodations under the Prepetition First Lien Loan Documents and the Prepetition Second Lien Note Documents, as applicable; (e) administering the loans and financial accommodations extended under the Prepetition First Lien Loan Documents and the Prepetition Second Lien Note

Documents, as applicable; (f) extending other financial accommodations to the Debtors under the Prepetition First Lien Loan Documents and the Prepetition Second Lien Note Documents, as applicable; and (g) making the decision to collect the indebtedness and obligations of the Debtors, neither the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee nor the Prepetition Second Lien Noteholders, as applicable, shall solely by reason thereof be considered to (x) owe any fiduciary obligation to the Debtors or any other party with respect to their exercise of any consent rights afforded them under the DIP Loan Documents or this Interim Order or (y) be exercising control over any operations of the Debtors or acting in any way as a responsible person, or as an owner or operator under any applicable law, including without limitation, any environmental law (including but not limited to the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. 9601, *et seq.*, the Resource Conservation and Recovery Act, 42 U.S.C. 6901, *et seq.*, as either may be amended from time to time, or any similar federal or state statute).

29.    <u>Successors and Assigns</u>.  The DIP Loan Documents and the provisions of this Interim Order shall be binding upon the Debtors, the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee, and the Prepetition Second Lien Noteholders and each of their respective successors and assigns, and shall inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee, and the Prepetition Second Lien Noteholders, and each of their respective successors and assigns including, without limitation, any trustee, examiner with expanded powers, responsible officer, estate administrator or representative, or similar person appointed in a case for any Debtor under

any chapter of the Bankruptcy Code. The terms and provisions of this Interim Order shall also be binding on all of the Debtors' creditors (including the Prepetition Second Lien Trustee and Prepetition Second Lien Noteholders), any Creditors' Committee, equity holders, and all other parties in interest, including, but not limited to a trustee appointed under chapter 7 or chapter 11 of the Bankruptcy Code.

30. <u>Binding Nature of Agreement</u>. Each of the DIP Loan Documents to which any of the Debtors are or will become a party shall constitute legal, valid, and binding obligations of the Debtors party thereto, enforceable in accordance with their terms. The DIP Loan Documents have been or will be properly executed and delivered to the DIP Agent or the DIP Lenders by the Debtors. Unless otherwise consented to in writing, the rights, remedies, powers, privileges, liens, and priorities of the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, the Prepetition Second Lien Trustee, and the Prepetition Second Lien Noteholders, as applicable, provided for in this Interim Order, the DIP Loan Documents, or otherwise shall not be modified, altered or impaired in any manner by any subsequent order (including a confirmation or sale order), by any plan of reorganization or liquidation in these Chapter 11 Cases, by the dismissal or conversion of these Chapter 11 Cases or in any subsequent case under the Bankruptcy Code unless and until the DIP Obligations and the Prepetition First Lien Obligations have first been indefeasibly paid in full in cash and completely satisfied and the commitments terminated in accordance with the DIP Loan Documents and the Prepetition First Lien Loan Documents.

31. <u>Subsequent Reversal or Modification</u>. This Interim Order is entered pursuant to section 364 of the Bankruptcy Code, and Bankruptcy Rules 4001(b) and (c), granting the DIP Lenders all protections afforded by section 364(e) of the Bankruptcy Code. If any or all of the

provisions of this Interim Order are hereafter reversed, modified, vacated or stayed, that action will not affect (a) the validity of any obligation, indebtedness or liability incurred hereunder by any of the Debtors to the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, Prepetition Second Lien Trustee, and the Prepetition Second Lien Noteholders, prior to the date of receipt by the DIP Agent, the Prepetition First Lien Agent, the Prepetition Second Lien Trustee, and the Prepetition Second Lien Noteholders of written notice of the effective date of such action or (b) the validity and enforceability of any lien or priority authorized or created under this Interim Order or pursuant to the DIP Loan Documents. Notwithstanding any such reversal, stay, modification or vacatur, any postpetition indebtedness, obligation or liability incurred by any of the Debtors to the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, Prepetition Second Lien Trustee, and the Prepetition Second Lien Noteholders prior to written notice to the DIP Agent, the Prepetition First Lien Agent, the Prepetition Second Lien Trustee, and the Prepetition Second Lien Noteholders of the effective date of such action, shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, Prepetition Second Lien Trustee, and the Prepetition Second Lien Noteholders, shall be entitled to all the rights, remedies, privileges, and benefits granted herein and in the DIP Loan Documents with respect to all such indebtedness, obligations or liability.

32.    Collateral Rights.  If any party who holds a lien or security interest in DIP Collateral or Prepetition Collateral that is junior and/or subordinate to the DIP Liens, the Prepetition First Lien Replacement Liens or the Prepetition Senior Liens in such DIP Collateral or Prepetition Collateral receives or is paid the proceeds of such DIP Collateral or Prepetition

Collateral prior to the indefeasible payment in full in cash and the complete satisfaction of (a) all DIP Obligations under the DIP Loan Documents and termination of the commitment in accordance with the DIP Loan Documents, and (b) the Prepetition First Lien Obligations under the Prepetition First Lien Loan Documents, such junior or subordinate lienholder shall be deemed to have received, and shall hold, the proceeds of any such DIP Collateral or Prepetition Collateral in trust for the DIP Lenders and the Prepetition First Lien Lenders and shall immediately turn over such proceeds for application by the DIP Agent and the Prepetition First Lien Agent to repay the Prepetition First Lien Obligations and the DIP Obligations in accordance with the DIP Loan Documents, the Prepetition First Lien Loan Documents and this Interim Order until indefeasibly paid in full.

33.    No Waiver.  This Interim Order shall not be construed in any way as a waiver or relinquishment of any rights that the DIP Agent or DIP Lenders, Prepetition First Lien Agent, Prepetition First Lien Lenders, Prepetition Second Lien Trustee or Prepetition Second Lien Noteholders may have to bring or be heard on any matter brought before this Court.

34.    Sale/Conversion/Dismissal.

(a)    Absent the consent of the DIP Agent and the DIP Lenders, the Debtors shall not seek or support entry of any order that provides for either the sale of the stock of the Debtors or the sale of all or substantially all of the assets of the Debtors under section 363 of the Bankruptcy Code to any party unless, in connection with such event, the proceeds of such sale are or will be indefeasibly paid to the DIP Agent and DIP Lenders on account of the DIP Obligations and the commitments under the DIP Loan Documents and this Interim Order are terminated in accordance therewith on the closing date of such sale.

(b)    If an order dismissing or converting any of these Chapter 11 Cases under sections 305 or 1112 of the Bankruptcy Code or otherwise, or appointing a chapter 11 trustee or a responsible officer or examiner with expanded powers, is at any time entered, no order shall be entered unless it provides that (a) the DIP Liens, the DIP Superpriority Claim, the Replacement Liens and the Adequate Protection Claims granted hereunder and in the DIP Loan Documents shall continue in full force and effect, remain binding on all parties-in-interest, and maintain their priorities as provided in this Interim Order and the DIP Loan Documents until all DIP Loan Obligations are indefeasibly paid in full in cash and completely satisfied and the commitments under the DIP Loan Documents are terminated in accordance with the DIP Loan Documents and (b) this Court shall retain jurisdiction, notwithstanding such dismissal, for purposes of enforcing the DIP Liens, the DIP Superpriority Claim, Replacement Liens, the Prepetition First Lien Adequate Protection Obligations and the Prepetition Second Lien Adequate Protection Obligations.

35.    <u>Limits on Lenders' Liability</u>.    Nothing in this Interim Order and subject to Paragraph 15 or in any of the DIP Loan Documents, the Prepetition First Lien Loan Documents, the Prepetition Second Lien Note Documents or any other documents related to this transaction shall in any way be construed or interpreted to impose or allow the imposition upon the DIP Agent, the DIP Lenders, the Prepetition First Lien Agent, the Prepetition First Lien Lenders the Prepetition Second Lien Trustee or the Prepetition Second Lien Noteholders of any liability for any claims arising from any and all activities by the Debtors or any of their subsidiaries or affiliates in the operation of their businesses or in connection with their restructuring efforts.

36.    <u>Priority of Terms</u>.    To the extent of any conflict between or among (a) the express terms or provisions of any of the DIP Loan Documents, the Motion, the Requested Relief, any

other order of this Court, or any other agreements, on the one hand, and (b) the terms and provisions of this Interim Order, on the other hand, unless such term or provision herein is phrased in terms of "as defined in" "as set forth in" or "as more fully described in" the DIP Loan Documents (or words of similar import), the terms and provisions of this Interim Order shall govern.

37.    <u>No Third Party Beneficiary</u>.  Except as explicitly set forth herein, no rights are created hereunder for the benefit of any third party, any creditor or any direct, indirect or incidental beneficiary.

38.    <u>Survival</u>.  Except as otherwise provided herein, (a) the protections afforded under this Interim Order, and any actions taken pursuant thereto, shall survive the entry of an order (i) dismissing any of these Chapter 11 Cases or (ii) converting any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code, and (b) the DIP Liens, the Replacement Liens, the DIP Superpriority Claim and Adequate Protection Claims shall continue in these Chapter 11 Cases, in any such successor case or after any such dismissal.  The DIP Liens, the Replacement Liens, the DIP Superpriority Claim and the Adequate Protection Claims shall maintain their priorities as provided in this Interim Order and the DIP Loan Documents, and not be modified, altered or impaired in any way by any other financing, extension of credit, incurrence of indebtedness (except with respect to any additional financing to be provided by the DIP Agent or the DIP Lenders in accordance with the Final Order), or any conversion of any of these Chapter 11 Cases into a case pursuant to chapter 7 of the Bankruptcy Code or dismissal of any of these Chapter 11 Cases, or by any other act or omission.

39.    <u>Adequate Notice/Scheduling of Final Hearing</u>.  The notice given by the Debtors of the Interim Hearing was given in accordance with Bankruptcy Rules 2002 and 4001, and

Bankruptcy Local Rules 2002-1, 4001-1(a), and 9013-1(m).  Such notice was good and sufficient under the particular circumstances and no other or further notice of the request for the relief granted at the Interim Hearing is required.  The Debtors shall promptly mail copies of this Interim Order and notice of the Final Hearing to any known party affected by the terms of this Interim Order and/or Final Order and any other party requesting notice after the entry of this Interim Order.  Any objection to the relief sought at the Final Hearing shall be made in writing setting forth with particularity the grounds thereof, and filed with the Court and served so as to be *actually received* no later than seven (7) days prior to the Final Hearing at 4:00 p.m. (Central) by the following (with electronic copies of any such objection at the time of service to the email address set forth below): (a) counsel to the Debtors, Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, TX 77002 (attn.: John F. Higgins (jhiggins@porterhedges.com) and Eric M. English (eenglish@porterhedges.com)) and Young Conaway Stargatt & Taylor, LLP, 1000 N. King Street, Rodney Square, Wilmington, DE 19801 (attn.:    M. Blake ~~Clearly~~ Cleary (mbcleary@ycst.com) and Joel A. Waite (jwaite@ycst.com)); (b) counsel to the DIP Agent and Prepetition First Lien Agent, Schulte Roth & Zabel LLP, 919 Third Avenue, New York, NY 10022 (Attn: Adam    C.    Harris    (adam.harris@srz.com)    and    David    M.    Hillman (david.hillman@srz.com)) and Landis Rath & Cobb LLP, 919 Market Street, Suite 1800, Wilmington, DE 19801 (Attn: Adam Landis (landis@lrclaw.com)); (c) counsel to the Prepetition Second Lien Trustee, Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036 (Attn: Mark R. Somerstein (mark.somerstein@ropesgray.com)), and (d) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn:  Mark Kenney (Mark.Kenney@usdoj.gov)).  The Court shall conduct a Final Hearing on the Requested Relief commencing on _Aug. 21_, 2015 at _11:00 AM_ (prevailing Eastern time).

40. <u>Immediate Binding Effect; Entry of Interim Order</u>. This Interim Order shall not be stayed and shall be valid and fully effective immediately upon entry, notwithstanding the possible application of Bankruptcy Rules 6004(h), 7062, and 9014, or otherwise, and the Clerk of the Court is hereby directed to enter this Interim Order on the Court's docket in these Chapter 11 Cases.

41. <u>Proofs of Claim</u>. Notwithstanding any order of this Court to the contrary, the Prepetition First Lien Agent, Prepetition First Lien Lenders, Prepetition Second Lien Trustee, Prepetition Second Lien Noteholders, DIP Agent, and DIP Lenders hereby are relieved of any obligation or requirement to file proofs of claim in the Chapter 11 Cases with respect to any Prepetition First Lien Obligations, Prepetition Second Lien Obligations, or DIP Obligations and any other claims or liens granted hereunder or created hereby. Upon approval of this Interim Order, the Debtors' Stipulations shall be deemed to constitute a timely filed proof of claim for the Prepetition First Lien Agent, the Prepetition First Lien Lenders, Prepetition Second Lien Trustee, and the Prepetition Second Lien Noteholders, and the Prepetition First Lien Agent, the Prepetition First Lien Lenders, Prepetition Second Lien Trustee, and the Prepetition Second Lien Noteholders shall be treated under section 502(a) of the Bankruptcy Code as if they each have filed a proof of claim. Notwithstanding the foregoing, the Prepetition First Lien Agent, the Prepetition First Lien Lenders, Prepetition Second Lien Trustee, and the Prepetition Second Lien Noteholders are hereby authorized and entitled, in their discretion, but not required, to file (and amend and/or supplement, as they see fit) a proof of claim and/or aggregate proofs of claim in each of these Chapter 11 Cases or Successor Cases for any claim allowed herein.

42. <u>Retention of Jurisdiction</u>. This Court shall retain exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Interim Order.

Dated:  Wilmington, Delaware

July 17, 2015

THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE